## **Exhibit A-2**

### **Cameron Assignment**

14165918

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

Rebecca Guerrero, County Clerk
Travis County, Texas
Feb 28, 2022 03:20 PM     Fee: $58.00
**2022037034**
*Electronically Recorded*

This page is intentionally added for electronic file stamp.

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.**

## ASSIGNMENT OF DEED OF TRUST

THIS ASSIGNMENT OF DEED OF TRUST ("Assignment") dated as of February 25, 2022, is executed and delivered by NORTHWEST FEDERAL CREDIT UNION ("Assignor"), to AUSTIN CAMERON, an adult individual, and JENNY CAMERON, an adult individual (collectively, "Assignee").

### RECITALS:

Assignor is the legal and equitable owner of that one certain Promissory Note (the "Note") in the original principal sum of THREE MILLION TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($3,200,000.00) dated April 23, 2015, executed by WC PARADISE COVE MARINA, LP, a Texas limited partnership (the "Borrower"), payable to the order of Assignor.

The Note is secured, among other security, by that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust") of even date with the Note, executed by Borrower in favor of Rebecca S. Conrad, Esq., as trustee, for the benefit of Assignor, recorded under Document No. 2015073414 of the Official Public Records of Travis County, Texas encumbering the real property more particularly described in Exhibit "A" attached hereto.

The Deed of Trust and all other mortgages, deeds of trust, assignments, pledges and security devices, of whatever kind or character securing the Note, are herein collectively called the "Security Documents."

### ASSIGNMENTS AND AGREEMENTS:

For good and valuable consideration paid to Assignor, the receipt and sufficiency of which are hereby acknowledged, Assignor has TRANSFERRED, ASSIGNED, GRANTED and CONVEYED and by these presents TRANSFERS, ASSIGNS, GRANTS and CONVEYS unto Assignee the Note, together with all of the Security Documents.

### NOTICE:

Assignor represents that Assignor has all requisite power and authority to make this assignment and transfer.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

EXECUTED EFFECTIVE AS OF the date first set forth above.

"ASSIGNOR"

**NORTHWEST FEDERAL CREDIT UNION**

By: _____

Name: Sara Depauw

Title: SVP of Lending

COMMONWEALTH OF Virginia    )

COUNTY OF FAIRFAX    )

Before me, the undersigned authority, on this day personally appeared Sara Depauw, the SVP of Lending of Northwest Federal Credit Union, known to me to be the person who signed the foregoing instrument, and acknowledged to me that she executed the instrument in the capacity and for the purposes therein expressed.

Given under my hand and seal of office on this 25 day of February, 2022.

_____
Notary Public

[Signatures Continue on Following Page]

2

**Assignee Signature Page for Assignment of Deed of Trust**

The foregoing assignment is accepted.

"ASSIGNEE"

AUSTIN CAMERON

JENNY CAMERON

STATE OF Florida )

COUNTY OF Martin )

Before me, the undersigned authority, on this day personally appeared Austin Cameron, an adult individual, known to me to be the person who signed the foregoing instrument, and acknowledged to me that he executed the instrument in the capacity and for the purposes therein expressed.

Given under my hand and seal of office on this 28th day of Feb, 2022.

Notary Public

STATE OF _____ )

COUNTY OF _____ )

Notary Public State of Florida
Jennifer L Jacobs
My Commission
HH 194718
Exp. 11/3/2025

Before me, the undersigned authority, on this day personally appeared Jenny Cameron, an adult individual, known to me to be the person who signed the foregoing instrument, and acknowledged to me that she executed the instrument in the capacity and for the purposes therein expressed.

Given under my hand and seal of office on this _____ day of _____, 2022.

Notary Public

3

Unofficial Document

**Assignee Signature Page for Assignment of Deed of Trust**

The foregoing assignment is accepted.

"ASSIGNEE"

_____
AUSTIN CAMERON

_____
JENNY CAMERON

STATE OF _____

COUNTY OF _____

Before me, the undersigned authority, on this day personally appeared Austin Cameron, an adult individual, known to me to be the person who signed the foregoing instrument, and acknowledged to me that he executed the instrument in the capacity and for the purposes therein expressed.

Given under my hand and seal of office on this _____ day of _____, 2022.

_____
Notary Public

STATE OF Texas )
                       )
COUNTY OF Travis )

Before me, the undersigned authority, on this day personally appeared Jenny Cameron, an adult individual, known to me to be the person who signed the foregoing instrument, and acknowledged to me that she executed the instrument in the capacity and for the purposes therein expressed.

Given under my hand and seal of office on this 28 day of February, 2022.

_____
Notary Public

KATHERINE SUE ENGSTROM
Notary Public, State of Texas
Comm. Expires 12 14 2022
Notary ID 131827175

3

## EXHIBIT "A"

### (Legal Description)

COMMENCING FOR REFERENCE at a 1/2" steel pipe found at the northwest corner of Lot 1, Amo Brill Second Subdivision Lake Tracts, recorded in Book 4, Page 193, Travis County Plat Records, also the northeast corner of said 280.509 acres, PROCEEDING S15°59'00"E 25.00 feet along the east line of said 280.509 acres to a mag nail found in rock, at the southeast corner of a 2.337 acre tract conveyed to Joyce Taylor and David Shook by deed recorded in Document No. 2004039877, TCOPR, for the northeast corner and POINT OF BEGINNING hereof;

THENCE S15°59'00"E 266.12 feet along the east line of said 280.509 acres and west line of said Lot 1 and Lot 2, to a 1/2" steel pin found at the mutual west corner of Lots 2 and 3, for angle point hereof;

THENCE S33°41'22"E 343.17 feet with the east line of said of said 280.509 acres and the west line of Lots 3 and 4 to a 1/2" steel pin with cap found, for angle point hereof;

THENCE S52°05'17"E 348.73 feet with the east line of said of said 280.509 acres and the west line of Lots 4, 5 and 6 to a 1/2" steel pin found in the west right-of-way (ROW) line of Rocky Ridge Road for southeast corner hereof,

THENCE with the west and north right-of-way (ROW) line of Rocky Ridge Road and the boundary of said 280.509 acres, the following 5 courses:

1) S10°49'43"W 205.54 feet to 1/2" steel pin found,
2) S25°35'43"W 149.30 feet to 1" steel spindle found,
3) S76°13'43"W 231.80 feet to a 1/2" steel pin with cap found,
4) N75°31'17"W 295.96 feet to a 1/2" steel pin with cap found at the east corner of a 0.088 acre deeded to Ron Doll by quitclaim deed in Volume 7665, Page 628, TCDR,
5) S71°36'18"W 98.24 feet to a 1/2" steel pin with cap found at a fence corner at the southeast corner of a 4833 square foot tract conveyed to Whittington Interests by deed in Document No. 2008039793, TCOPR, for corner hereof;

THENCE N40°35'05"W 123.68 feet along the east line of said Whittington tract, to a 1/2" steel pin with cap found at fence angle for angle point hereof;

THENCE N5°41'43"W 85.61 feet along the east line of said Whittington tract, to a 1/2" steel pin with cap found at fence corner for corner hereof;

THENCE N51°08'19"E 84.96 feet along a west line of said 280.509 acres, to a 1/2" steel pin with cap found at a fence corner at its southeast corner, for inside corner hereof;

THENCE N40°34'07"W 239.28 feet along a fence to a 1/2" steel pin with cap found at the 690-foot elevation contour as found on the ground, for angle hereof;

4

THENCE along said 690 foot contour as found on the ground and a west line of said 280.509 acres, also the east line of a 1 000 acre tract conveyed to Rocky Ridge Residential LLC by deed recorded in Document No. 2014066058, TCOPR, the following 7 courses:

1) N49°13'50"W 57.26 feet to a 1/2" steel pin with cap found for angle,
2) N49°34'19"W 84.44 feet to a 1/2" steel pin with cap found for angle,
3) N52°26'31"W 53.05 feet to a 1/2" steel pin with cap found for angle,
4) N56°19'05"W 38.03 feet to a 1/2" steel pin with cap found for angle,
5) N71°15'17"W 58.07 feet to a 1/2" steel pin with cap found for angle,
6) N76°43'09"W 55.39 feet to a 1/2" steel pin with cap found for angle,
7) N78°32'22"W 73.09 feet to a 1/2" steel pin found for angle hereof;

THENCE with the north line of a 1.464 acre tract conveyed to John Bullock and David L. Morriso by deed recorded in Document No. 2004162480, TCOPR, the following 3 courses:

1) N39°41'20"W 52.76 feet to a mag nail set in asphalt,
2) S89°04'51"W 55.79 feet to a mag nail set in asphalt,
3) S68°30'04"W 64.36 feet to a 1/2" steel pin with cap found at the northwest corner of said 1.464 acres, for angle hereof;

THENCE S39°23'41"W 125.96 feet with the north line of a court settlement of Cause No. 03-93-00153-CV, Third Court of Appeals, Travis County, Texas, to a 1/2" steel pin with orange cap set for corner hereof,

THENCE S52°07'10"E 37.93 feet with the west line of said settlement to a brass disk found in concrete at the northeast corner of a tract conveyed to Fred P. Holub in Volume 6327, Page 243, TCDR (original deed 968/67), for angle hereof;

THENCE S02°45'03"W 100.00 feet along the northwest line of said Holub tract to a 1/2" steel pipe found at the base of a live oak tree, for angle hereof;

THENCE with the north and west line of a 1 369 acre tract conveyed to Christopher A. Woods by deed recorded in Document No. 2008112538, TCOPR, the following 2 courses:

1) N52°10'26"W 77.41 feet to a 1/2" steel pin with orange cap set at the northwest corner of said 1.369 acre tract,
2) S09°42'43"E 143.67 feet to a 1/2" steel pin with orange cap set at the west corner of said 1.369 acre tract, for angle hereof;

THENCE S16°56'59"W 49.95 feet with the west line of a 0 868 acre tract conveyed to Serendipity Properties by deed recorded in Document No. 2004085588, for corner hereof;

THENCE S61°15'19"E 92 53 feet with the southwest line of said 0.868 acre to a 1/2" steel pin with cap set at the northwest corner of a 0.7800 acre tract conveyed to Serendipity Properties by deed recorded in Document No. 2009196097, on an east line of said 280.509 acres, for angle hereof,

THENCE S20°32'30"E 185.40 feet along said east line of 280.509 acres and the northwest lines of two tracts conveyed to Serendipity Properties by deed recorded in Documents 2009196007 and 2011143441, TCOPR, to a 1/2" steel pin with cap set at the southwest corner of said tracts, for inside corner hereof;

THENCE N60°56'26"W 68.33 feet along the northeast line of a 0.3600 acre tract conveyed to Candice O. Cates by deed recorded in Document No. 2009083694, TCOPR, and the northeast line of a 1.928 acre tract conveyed to Serendipity Properties by deed recorded in Document No. 2011095477, TCOPR, to its southwest corner, for angle hereof;

THENCE S08°01'21"E 185.49 feet along the west line of said Serendipity tract and of Lot 21, Arno Brill Third Subdivision Lake Tracts, Book 4, Page 198, Travis County Plat Records, to a 1/2" steel pin with cap set at the northwest corner of said Lot 21, for angle point;

THENCE along the east line of said 280.509 acres and the west line of said subdivision the following 6 courses:

1) S01°05'38"E 194.93 feet to a 1/2" steel pin found with cap,
2) S32°06'13"E 129.36 feet to 1/2" steel pipe found at corner of Lots 23/23,
3) S43°47'07"E 125.25 feet to a 1/2" steel pipe found at corner of Lots 23/24,
4) S50°16'35"E 130.90 feet to a 1/2" steel pipe found in corner of Lots 24/25,
5) S45°41'35"E 146.90 feet to a 1/2" steel pin found at corner of Lots 25/26,
6) N86°36'03"E 132.72 feet to a 1/2" steel pipe found at the southeast corner of Lot 27, for angle hereof;

THENCE S27°47'22"E 146.57 feet with the west line of a 2.549 acre tract conveyed to Gilberto & Lucia Fraiton by deed recorded in Document No. 2012001228, TCOPR, to a 1/2" steel pipe found at the corner of Lots 31/32 for corner hereof;

THENCE resuming with the boundary of said Brill Third Subdivision (4/198) and east line of said 280.509 acres the following 6 courses:

1) S52°12'24"W 399.33 feet to a 1/2" steel pipe found at a rock column at the corner of Lots 32/03 for angle,
2) S13°51'04"W 136.26 feet to a steel pin found at a 1/2" steel pipe at an angle of Lot 33,
3) S23°29'28"E 127.06 feet to a 60d nail found at the corner of Lots 33/34,
4) S23°39'12"E 255.48 feet to a 1/2" steel pin with cap set at corner of Lots 34/35,
5) S61°32'37"E 108.82 feet to a 1/2" steel pin with cap set at an angle of Lot 35,
6) N43°02'32"E 50.40 feet to a ½" steel pin found at the northwest corner of a 10.437 acre tract conveyed to Paul Hornsby by deed recorded in Document No. 2003046748, TCOPR, for corner hereof;

THENCE S29°19'06"E 1159.78 feet with the southwest line of said 10.437 acres to a submerged point at its south corner, for southeast corner hereof;

THENCE S27°56'00"W 369.51 feet with the west line of a 1.545 acre tract conveyed to David A. Hall by deed recorded in Document No. 2000184503, and continuing with the submerged center of a submerged ravine, being the west line of a tract conveyed to Charles McCormick in Volume 7802, Page 612, TCDR, to a point on the submerged north bank of the Colorado River, for southeast corner hereof;

THENCE with the west line of said 280.509 acres, with calls for the flooded east bank of the Colorado River, said calls taken from LCRA map no. 6-1234 of the Marshall Ford Dam Right-of-Way Survey dated May 14, 1937, the following 11 courses:

1) N56°38'25"W 746.56 feet,
2) N52°07'00"W 1166.00 feet,
3) N62°27'00"W 296.90 feet,
4) N50°43'00"W 355.80 feet,
5) N53°44'00"W 669.00 feet,
6) N40°39'00"W 255.71 feet,
7) N46°52'00"W 825.40 feet,
8) N35°23'00"W 886.70 feet,
9) N12°05'00"W 1017.80 feet,
10) N11°28'00"E 795.10 feet,
11) N27°18'00"E 615.97 feet to a point at the southwest corner of a 2.337 acre, 25-foot wide strip of land conveyed to Joyce Taylor & David Shook by deed recorded in Document No. 2004039877, TCOPR, for the northwest corner hereof;

THENCE S61°05'17"E 3688.99 feet with the south line of said 2.337 acres to a 1/2" steel pin with orange cap found at a point of curve to the left in the south line of said 2.337 acres;

THENCE along said curve to the left, with chord of S83°09'01"E 18.78 feet and radius of 25 feet, to a 1/2" steel pin with orange cap found at the end of said curve,

THENCE N74°47'15"E 374.45 feet with the south line of said 2.337 acres to the POINT OF BEGINNING, containing 269.059 acres of land, more or less.

## **Exhibit A-5**

**AC VIP Assignment**

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

Rebecca Guerrero, County Clerk
Travis County, Texas
Mar 21, 2022 02:21 PM     Fee: $ 54.00
**2022051476**
*Electronically Recorded*

This page is intentionally added for electronic file stamp.

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.**

## ASSIGNMENT OF DEED OF TRUST

THIS ASSIGNMENT OF DEED OF TRUST ("Assignment") dated as of March 16, 2022, is executed and delivered by AUSTIN CAMERON, an adult individual, and JENNY CAMERON, an adult individual (collectively, "Assignor"), to AC VIP PC MARINA DEBT, LLC, a Texas limited liability company ("Assignee").

### RECITALS:

Assignor is the legal and equitable owner of that one certain Promissory Note (the "Note") in the original principal sum of THREE MILLION TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($3,200,000.00) dated April 23, 2015, executed by WC PARADISE COVE MARINA, LP, a Texas limited partnership (the "Borrower"), originally payable to the order of NORTHWEST FEDERAL CREDIT UNION, which was subsequently assigned to Assignor pursuant to that certain Allonge dated February 25, 2022 executed by NORTHWEST FEDERAL CREDIT UNION for the benefit of Assignor.

The Note is secured, among other security, by that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust") of even date with the Note, executed by Borrower in favor of Rebecca S. Conrad, Esq., as trustee, originally for the benefit of NORTHWEST FEDERAL CREDIT UNION, recorded under Document No. 2015073414 of the Official Public Records of Travis County, Texas encumbering the real property more particularly described in Exhibit "A" attached hereto. The Deed of Trust was subsequently assigned to Assignor by Northwest Federal Credit Union pursuant to that certain Assignment of Deed of Trust (the "Assignment") dated February 25, 2022, recorded under Document 2022037034 of the Official Public Records of Travis County, Texas.

The Deed of Trust, the Assignment and all other mortgages, deeds of trust, assignments, pledges and security devices, of whatever kind or character securing the Note, are herein collectively called the "Security Documents."

### ASSIGNMENTS AND AGREEMENTS:

For good and valuable consideration paid to Assignor, the receipt and sufficiency of which are hereby acknowledged, Assignor has TRANSFERRED, ASSIGNED, GRANTED and CONVEYED and by these presents TRANSFERS, ASSIGNS, GRANTS and CONVEYS unto Assignee the Note, together with all of the Security Documents.

1

**NOTICE:**

Assignor represents that Assignor has all requisite power and authority to make this assignment and transfer.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

2

EXECUTED EFFECTIVE AS OF the date first set forth above.

"ASSIGNOR"

AUSTIN CAMERON

JENNY CAMERON

STATE OF TEXAS )

COUNTY OF TRAVIS )

Before me, the undersigned authority, on this day personally appeared Austin Cameron, an adult individual, known to me to be the person who signed the foregoing instrument, and acknowledged to me that he executed the instrument in the capacity and for the purposes therein expressed.

Given under my hand and seal of office on this 16TH day of March, 2022.

Notary Public

STATE OF TEXAS )

COUNTY OF TRAVIS )

KATHERINE SUE ENGSTROM
Notary Public, State of Texas
Comm. Expires 12-14-2022
Notary ID 131827175

Before me, the undersigned authority, on this day personally appeared Jenny Cameron, an adult individual, known to me to be the person who signed the foregoing instrument, and acknowledged to me that she executed the instrument in the capacity and for the purposes therein expressed.

Given under my hand and seal of office on this 16TH day of March, 2022.

Notary Public

KATHERINE SUE ENGSTROM
Notary Public, State of Texas
Comm. Expires 12-14-2022
Notary ID 131827175

[Signatures Continue on Following Page]

3

Order No. 4713007444
Page 1 of 4

## Exhibit A

FIELD NOTES FOR 269.059 ACRES OF LAND, MORE OR LESS, OUT OF THE W. J. JOLLY SURVEY NO. 54, THE THOMAS SYLVESTER SURVEY NO. 73 AND THE THOMAS WOOD SURVEY NO. 471, TRAVIS COUNTY, TEXAS, BEING PART OF A 280.509 ACRE TRACT CONVEYED TO PARADISE COVE MARINA AND YACHT CLUB, LLC BY DEED RECORDED IN DOCUMENT NO. 2001156239, TRAVIS COUNTY OFFICIAL PUBLIC RECORDS (TCOPR), SAID 269.059 ACRES BEING DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING FOR REFERENCE at a 1/2" steel pipe found at the northwest corner of Lot 1, Arno Brill Second Subdivision Lake Tracts, recorded in Book 4, Page 193, Travis County Plat Records, also the northeast corner of said 280.509 acres, PROCEEDING S15°59'00"E 25.00 feet along the east line of said 280.509 acres to a mag nail found in rock, at the southeast corner of a 2.337 acre tract conveyed to Joyce Taylor and David Shook by deed recorded in Document No. 2004039877, TCOPR, for the northeast corner and POINT OF BEGINNING hereof;

THENCE S15°59'00"E 266.12 feet along the east line of said 280.509 acres and west line of said Lot 1 and Lot 2, to a 1/2" steel pin found at the mutual west corner of Lots 2 and 3, for angle point hereof;

THENCE S33°41'22"E 343.17 feet with the east line of said of said 280.509 acres and the west line of Lots 3 and 4 to a 1/2" steel pin with cap found, for angle point hereof;

THENCE S52°05'17"E 348.73 feet with the east line of said of said 280.509 acres and the west line of Lots 4, 5 and 6 to a 1/2" steel pin found in the west right-of-way (ROW) line of Rocky Ridge Road for southeast corner hereof;

THENCE with the west and north right-of-way (ROW) line of Rocky Ridge Road and the boundary of said 280.509 acres, the following 5 courses:

1) S10°49'43"W 205.54 feet to 1/2" steel pin found,
2) S25°35'43"W 149.30 feet to 1" steel spindle found,
3) S76°13'43"W 231.80 feet to a 1/2" steel pin with cap found,
4) N75°31'17"W 295.96 feet to a 1/2" steel pin with cap found at the east corner of a 0.088 acre deeded to Ron Doll by quitclaim deed in Volume 7665, Page 628, TCDR,
5) S71°36'18"W 98.24 feet to a 1/2" steel pin with cap found at a fence corner at the southeast corner of a 4833 square foot tract conveyed to Whittington Interests by deed in Document No. 2008039793, TCOPR, for corner hereof;

THENCE N40°35'05"W 123.68 feet along the east line of said Whittington tract, to a 1/2" steel pin with cap found at fence angle for angle point hereof;

THENCE N5°41'43"W 85.61 feet along the east line of said Whittington tract, to a 1/2" steel pin with cap found at fence corner for corner hereof;

THENCE N51°08'19"E 84.96 feet along a west line of said 280.509 acres, to 1/2" steel pin with cap found at a fence corner at its southeast corner, for inside corner hereof;

THENCE N40°34'07"W 239.28 feet along a fence to a 1/2" steel pin with cap found at the 690-foot elevation contour as found on the ground, for angle hereof;

THENCE along said 690-foot contour as found on the ground and a west line of said 280.509 acres, also the east line of a 1.000 acre tract conveyed to Rocky Ridge Residential LLC by deed recorded in Document No. 2014066058, TCOPR, the following 7 courses:

1) N49°13'50"W 57.26 feet to a 1/2" steel pin with cap found for angle,

2) N49°34'19"W 84.44 feet to a 1/2" steel pin with cap found for angle,
3) N52°26'31"W 53.05 feet to a 1/2" steel pin with cap found for angle,
4) N56°19'05"W 38.03 feet to a 1/2" steel pin with cap found for angle,
5) N71°15'17"W 58.07 feet to a 1/2" steel pin with cap found for angle,
6) N76°43'09"W 56.39 feet to a 1/2" steel pin with cap found for angle,
7) N78°32'22"W 73.09 feet to a 1/2" steel pin found for angle hereof;

THENCE with the north line of a 1.464 acre tract conveyed to John Bullock and David L. Morriso by deed recorded in Document No. 2004162480, TCOPR, the following 3 courses:

1) N39°41'20"W 52.76 feet to a mag nail set in asphalt,
2) S89°04'51"W 55.79 feet to a mag nail set in asphalt,
3) S68°30'04"W 64.36 feet to a 1/2" steel pin with cap found at the northwest corner of said 1.464 acres, for angle hereof;

THENCE S39°23'41"W 125.96 feet with the north line of a court settlement of Cause No. 03-93-00153-CV, Third Court of Appeals, Travis County, Texas, to a 1/2" steel pin with orange cap set for corner hereof;

THENCE S52°07'10"E 37.93 feet with the west line of said settlement to a brass disk found in concrete at the northeast corner of a tract conveyed to Fred P. Holub in Volume 6327, Page 243, TCDR (original deed 968/67), for angle hereof;

THENCE S02°45'03"W 100.60 feet along the northwest line of said Holub tract to a 1/2" steel pipe found at the base of a live oak tree, for angle hereof;

THENCE with the north and west line of a 1.369 acre tract conveyed to Christopher A. Woods by deed recorded in Document No. 2008112538, TCOPR, the following 2 courses:

1) N52°10'26"W 77.41 feet to a 1/2" steel pin with orange cap set at the northwest corner of said 1.369 acre tract,
2) S09°42'43"E 143.67 feet to a 1/2" steel pin with orange cap set at the west corner of said 1.369 acre tract, for angle hereof;

THENCE S16°56'59"W 49.95 feet with the west line of a 0.868 acre tract conveyed to Serendipity Properties by deed recorded in Document No. 2004085588, for corner hereof;

THENCE S61°15'19"E 92.53 feet with the southwest line of said 0.868 acre to a 1/2" steel pin with cap set at the northwest corner of a 0.7800 acre tract conveyed to Serendipity Properties by deed recorded in Document No. 2009196097, on an east line of said 280.509 acres, for angle hereof;

THENCE S20°32'36"E 185.40 feet along said east line of 280.509 acres and the northwest lines of two tracts conveyed to Serendipity Properties by deed recorded in Documents 2009196097 and 2011143441, TCOPR, to a 1/2" steel pin with cap set at the southwest corner of said tracts, for inside corner hereof;

THENCE N60°56'26"W 68.33 feet along the northeast line of a 0.3600 acre tract conveyed to Candice O. Jones by deed recorded in Document No. 2008083694, TCOPR, and the northeast line of a 1.928 acre tract conveyed to Serendipity Properties by deed recorded in Document No. 2011095477, TCOPR, to its southwest corner, for angle hereof;

THENCE S08°11'17"E 195.49 feet along the west line of said Serendipity tract and of Lot 21, Arno Brill Third Subdivision Lake Tracts, Book 4, Page 198, Travis County Plat Records, to a 1/2" steel pin with cap set at the northwest corner of said Lot 21, for angle point;

THENCE along the east line of said 280.509 acres and the west line of said subdivision the following 6 courses:

1) S01°05'38"E 184.83 feet to a 1/2" steel pin found with cap,
2) S32°06'13"E 129.56 feet to a 1/2" steel pipe found at corner of Lots 23/23,
3) S43°47'07"E 123.51 feet to a 1/2" steel pipe found at corner of Lots 23/24,
4) S50°16'25"E 136.90 feet to a 1/2" steel pipe found at corner of Lots 24/25,
5) S45°41'35"E 140.90 feet to a 1/2" steel pin found at corner of Lots 25/26,
6) N86°56'03"E 132.72 feet to a 1/2" steel pipe found at the southeast corner of Lot 27, for angle hereof;

THENCE S27°47'22"E 146.57 feet with the west line of a 2.549 acre tract conveyed to Gilberto & Lucia Franco by deed recorded in Document No. 2012210228, TCOPR, to a 1/2" steel pipe found at the corner of Lots 31/32 for corner hereof;

THENCE resuming with the boundary of said Brill Third Subdivision (4/198) and east line of said 280.509 acres the following 6 courses:

1) S52°12'24"W 399.33 feet to a 1/2" steel pipe found at a rock column at the corner of Lots 32/33 for angle,
2) S12°51'04"W 116.26 feet to a steel pin found in a 1/2" steel pipe at an angle of Lot 33,
3) S23°29'28"E 127.06 feet to a 60d nail found at the corner of Lots 33/34,
4) S23°39'12"E 255.48 feet to a 1/2" steel pin with cap set at corner of Lots 34/35,
5) S61°32'37"E 108.82 feet to a 1/2" steel pin with cap set at an angle of Lot 35,
6) N83°02'32"E 50.40 feet to a ½" steel pin found at the northwest corner of a 10.437 acre tract conveyed to Paul Hornsby by deed recorded in Document No. 2003046538, TCOPR, for corner hereof;

THENCE S29°39'06"E 1159.78 feet with the southwest line of said 10.437 acres to a submerged point at its south corner, for southeast corner hereof;

THENCE S27°56'00"W 369.51 feet with the west line of a 1.545 acre tract conveyed to David A. Hall by deed recorded in Document No. 2000184503, and continuing with the approximate center of a submerged ravine, being the west line of a tract conveyed to Charles McCormick in Volume 762, Page 612, TCDR, to a point on the submerged north bank of the Colorado River, for southeast corner hereof;

THENCE with the west line of said 280.509 acres, with calls for the flooded east bank of the Colorado River, said calls taken from LCRA map no. 6-1234 of the Marshall Ford Dam Right-of-Way Survey dated May 14, 1937, the following 11 courses:

1) N56°38'25"W 746.56 feet,
2) N52°07'00"W 1166.00 feet,
3) N62°27'00"W 296.90 feet,
4) N50°43'00"W 355.80 feet,
5) N53°44'00"W 669.00 feet,
6) N40°39'00"W 255.71 feet,
7) N46°52'00"W 825.40 feet,
8) N35°23'00"W 886.70 feet,
9) N12°05'00"W 1017.80 feet,
10) N11°28'00"E 795.10 feet,
11) N27°18'00"E 615.97 feet to a point at the southwest corner of a 2.337 acre, 25-foot wide strip of land conveyed to Joyce Taylor & David Shook by deed recorded in Document No. 2004039877, TCOPR, for the northwest corner hereof;

THENCE S61°05'17"E 3688.99 feet with the south line of said 2.337 acres to a 1/2" steel pin with orange cap found at a point of curve to the left in the south line of said 2.337 acres;

THENCE along said curve to the left, with chord of S83°09'01"E 18.78 feet and radius of 25 feet, to a 1/2" steel pin with orange cap found at the end of said curve;

THENCE N74°47'15"E 374.45 feet with the south line of said 2.337 acres to the POINT OF BEGINNING, containing 269.059 acres of land, more or less.

NOTE:  COMPANY DOES NOT REPRESENT THAT THE ABOVE ACREAGE AND/OR SQUARE FOOTAGE CALCULATIONS ARE CORRECT.

## **Exhibit A-6**

### **Notice of Default**

**AC VIP PC MARINA DEBT, LLC**
1119 Marina Point Drive
Strawn, Texas 76475
pcdebt@vipmarinas.com

May 12, 2025

*VIA FEDEX*:
WC Paradise Cove Marina, LP
814 Lavaca Street
Austin, TX 78701
Attn : Legal Department

*VIA FEDEX*:
Hayward PLLC
7600 Burnet Road, STE. 530
Austin, Texas 78757
Attn: Ron Satija

*VIA FEDEX*:
Crestone Property Group, LLC
c/o WC Paradise Cove Marina, LP
401 Congress Ave., 33rd Floor
Austin, Texas 78701
Attn:  Natin Paul

*VIA FEDEX*:
Natin Paul
c/o WC Paradise Cove Marina, LP
401 Congress Ave., 33rd Floor
Austin, Texas 78701

*AND VIA EMAIL:*
legaldocs@world-class.com
npaul@world-class.com
rsatija@haywardfirm.com

Re:    *Notice of Default*

Ladies and Gentlemen:

Reference is made to that certain Loan and Security Agreement dated April 23, 2015 (as amended, the "***Loan Agreement***"), between WC Paradise Cove Marina, LP, a Texas limited partnership, as borrower ("***Borrower***"), and AC VIP PC Marina Debt, LLC, as lender ("***Lender***"), successor by assignment to Northwest Federal Credit Union, pursuant to which Lender loaned (the "***Loan***") the principal amount of Three Million Two Hundred Thousand and No/100 Dollars ($3,200,000.00) to Borrower.  Such Loan is evidenced by that certain Promissory Note dated April 23, 2015 (the "***Note***") and secured by, among other things, the collateral (the "***Property***") as more particularly described in that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated April 23, 2015 by Borrower, as grantor, in favor of Lender, as beneficiary (as amended, the "***Deed of Trust***").  Further, the Loan is guaranteed by Crestone Property Group, LLC, a Texas limited liability company and Natin Paul, an adult individual (collectively, the "***Guarantors***") pursuant to those certain Unconditional and Continuing Guaranty and Subordination Agreements, as amended, each dated April 23, 2015 (collectively, the "***Guaranty***"; together with the Loan Agreement, the Note, the Deed of Trust, and any and all documentation evidencing the obligations and duties of Borrower and Lender, collectively, the "***Loan Documents***", as modified by the *Debtor's Amended Plan of Reorganization* [Docket No. 126] filed on February 26, 2024 (the "***Plan***") and the *Findings of Facts, Conclusions of Law, and Order Confirming Amended Chapter 11 Plan* [Docket No. 133] entered on April 2, 2024 (the "***Confirmation Order***") in *In re WC Paradise Cove Marina, L.P.*, Case No. 23-10731 (CGB)

1

AC VIP PC MARINA DEBT, LLC
1119 Marina Point Drive
Strawn, Texas 76475
pcdebt@vipmarinas.com

(Bankr. W.D. Tex.)).  Pursuant to the Plan, the New Principal Balance of the Loan was $4,860,638.00 as of the Effective Date of the Plan. Capitalized terms used and not defined herein have the meanings given to such terms in the Loan Agreement or the Plan, as applicable.

As of the date of this notice, the Borrower has failed to pay the loan balance due of $5,138,157.58 pursuant to the terms of the Loan Agreement and the Plan. Such failure constitutes a monetary default under terms of the Note, the Deed of Trust, and the Plan.  Under the terms of the Plan, the Borrower has five (5) Business Days from the date hereof to cure such default.

Pursuant to the terms of the Loan Agreement and the Plan, as a result of the foregoing default(s), should the default(s) remain uncured after the expiration of the applicable cure period, interest will accrue from the date of the default on the Obligations at the Default Interest Rate of 18% per annum.  As of May 12, 2025, the aggregate amount of all Obligations was $5,138,157.58 plus any applicable legal fees and costs of collection.

Additionally, as of the date of this notice, the Borrower has failed to cure the quarterly reporting default noticed on April 11, 2025, pursuant to the Plan, § Class 3(c)(1).  For your convenience, those items are set forth on Annex A to this notice.  Under the terms of the Plan, the Borrower had thirty (30) days from April 11, 2025 to cure such default(s). As of the date of this notice, the Borrower has additionally failed to provide the Lender those monthly reporting items specified in the Plan, § Class 3(c)(1) on May 10, 2025.  For your convenience, those items are also set forth on Annex A to this notice.  Please provide these to Lender immediately.

Finally, you are hereby notified that Lender hereby reserves all rights and remedies under the Loan Agreement, the Note, the Deed of Trust, the other Loan Documents, the Plan and Confirmation Order in addition to all other rights and remedies available to it under applicable law or in equity.  All such rights and remedies may be exercised at any time and from time to time by Lender without notice to Borrower or any of the Guarantors, other than notices expressly required under the Loan Documents, the Plan, the Confirmation Order or applicable law.

Sincerely,

AC VIP PC MARINA DEBT, LLC,
a Texas limited liability company

By: _____
Name: Austin Cameron
Title:  Manager

AC VIP PC MARINA DEBT, LLC
1119 Marina Point Drive
Strawn, Texas 76475
pcdebt@vipmarinas.com

**ANNEX A**

Required Reporting

The following reporting items are missing as of May 12, 2025:

Quarterly reporting requirements were due on or before April 10, 2025 (due on or before the 10th day of the beginning of each calendar quarter after the Effective Date): quarterly P&L statements, occupancy reports, rent rolls, and balance sheets for the Debtor.

Monthly reporting requirements were due on or before May 10, 2025 (due on or before 10th day of each month): (1) all official communications to and from LCRA including any inspection reports and memoranda; (2) monthly bank statements of the Debtor's operating account from the preceding month; (3) evidence of current insurance and insurance claims that were filed in the preceding 30 days and any notice of cancellation of insurance.

**Exhibit A-7**

**Fourth LFA**

# LIMITED FORBEARANCE AGREEMENT

This LIMITED FORBEARANCE AGREEMENT (this "***Agreement***"), dated effective as of September 1, 2025, is between WC PARADISE COVE MARINA, LP (the "***Borrower***"), the Obligor (as defined below) party hereto, and AC VIP PC MARINA DEBT, LLC, a Texas limited liability company (the "***Lender***").  Capitalized terms used and not defined in this Agreement have the meanings given to them in the Loan and Security Agreement.

## RECITALS:

A.      Borrower is indebted to the Lender under various agreements and instruments, including without limitation pursuant to that certain Loan and Security Agreement dated April 23, 2015 (as amended from time to time, including by the Plan and Confirmation Order (as defined below), the "***Loan and Security Agreement***"), between Borrower and Lender, successor by assignment to Northwest Federal Credit Union, pursuant to which Lender loaned (as amended and extended from time to time, including pursuant to the Plan and Confirmation Order, the "***Loan***") the original principal amount of Three Million Two Hundred Thousand and No/100 Dollars ($3,200,000.00) to Borrower. Such Loan is evidenced by that certain Promissory Note dated April 23, 2015 (the "***Note***") and secured by, among other things, the collateral (the "***Property***") as more particularly described in that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated April 23, 2015 by Borrower, as grantor, in favor of Lender, as beneficiary, and assigned to Lender on March 16, 2022 (as amended, the "***Deed of Trust***").

B.      The Loan obligations are secured by: (i) UCC Financing Statement, filed with the Texas Secretary of State (Filing No. 15-0027360903) on or about August 17, 2015, as continued by the UCC Financing Statement Amendment, filed with the Texas Secretary of State (Filing No. 20-00069182) on or about February 20, 2020, and assigned to the Lender by the UCC Financing Statement Amendment, filed with the Texas Secretary of State (Filing No. 22-00225713) on or about May 3, 2022, as modified by the Plan and the Confirmation Order; and (ii) UCC Financing Statement, filed as a fixture filing under Clerk's File No. 2015074141 in the Official Public Records of Travis County, Texas on or about May 13, 2015, as continued by the UCC Financing Statement Amendment, filed under Clerk's File No. 2019186897 in the Official Public Records of Travis County, Texas on or about November 26, 2019, and assigned to the Lender by the UCC Financing Statement Amendment, filed with the County Clerk, Travis County, Texas (Filing No. 2022083111) on or about May 6, 2022, (iii) UCC Financing Statement, filed with the Texas Secretary of State (Filing No. 25-0026363805) on or about May 30, 2025, each as may be modified by the Plan and the Confirmation Order ((i) and (iii) in this paragraph, the "***Financing Statements***").

C.      The Loan is guaranteed by Crestone Property Group, LLC, a Texas limited liability company, and Natin Paul, an adult individual (collectively, the "***Guarantors***"), pursuant to those certain Unconditional and Continuing Guaranty and Subordination Agreements, as amended, each dated April 23, 2015 (collectively, the "***Guaranty***").

D.      On September 4, 2023, the Borrower filed a petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Western District of Texas (the "***Bankruptcy Court***"), initiating the bankruptcy case entitled *In re WC Paradise*

*Cove Marina, L.P.*, Case No. 23-10731 (CGB) (the "***Bankruptcy Case***").  The Borrower filed the *Debtor's Amended Plan of Reorganization* [Docket No. 126] filed on February 26, 2024 (the "***Plan***") and the Bankruptcy Court entered the *Findings of Facts, Conclusions of Law, and Order Confirming Amended Chapter 11 Plan* [Docket No. 133] on April 2, 2024 (the "***Confirmation Order***") in the Bankruptcy Case.  Pursuant to the Plan, the new principal balance of the Loan was $4,860,638.00 as of the effective date of the Plan.

E.      Pursuant to the Plan, all remaining principal, interest, fees, costs and expenses owed by Borrower to Lender under the Loan Documents were due and payable on May 10, 2025, and the Borrower failed to pay such amount in full when due pursuant to the terms of the Loan Documents.  As of July 31, 2025, all remaining principal, interest, fees, costs and expenses owed by Borrower to Lender under the Loan Documents was $5,213,426.35, which amount remains outstanding as of the date of this Agreement.  Such failure to repay such amounts in full constitutes a monetary default under the terms of the Loan Documents. The Borrower failed to cure the monetary default under applicable cure period set forth in the Plan.

F.      On May 12, 2025, Lender posted its "Notice of Substitute Trustee's Sale" with the County Clerk of Travis County, Texas evidencing Lender's intent to conduct a foreclosure sale of the Property on June 3, 2025, and on May 13, 2025, Lender delivered to the Obligors (as defined below) a notice of foreclosure sale regarding the Property and attaching the Notice of Substitute Trustee.

G.      On June 2, 2025, Lender and Obligors (as defined below) entered into a Limited Forbearance Agreement pursuant to which the Lender agreed to, amongst other things and subject to certain conditions, forbear from foreclosing on the Property until after June 30, 2025.

H.      On June 10, 2025, Lender posted its "Notice of Substitute Trustee's Sale" with the County Clerk of Travis County, Texas evidencing Lender's intent to conduct a foreclosure sale of the Property on July 1, 2025, and on June 10, 2025, Lender delivered to the Obligors (as defined below) a notice of foreclosure sale regarding the Property and attaching the Notice of Substitute Trustee.

I.      On June 30, 2025, Lender and Obligors (as defined below) entered into a second Limited Forbearance Agreement pursuant to which the Lender agreed to, amongst other things and subject to certain conditions, forbear from foreclosing on the Property until after August 1, 2025.

J.      On July 10, 2025, Lender posted its "Notice of Substitute Trustee's Sale" with the County Clerk of Travis County, Texas evidencing Lender's intent to conduct a foreclosure sale of the Property on August 5, 2025, and on July 11, 2025, Lender delivered to the Obligors (as defined below) a notice of foreclosure sale regarding the Property and attaching the Notice of Substitute Trustee Sale.

K.      On August 1, 2025, Lender and Obligors (as defined below) entered into a third Limited Forbearance Agreement pursuant to which the Lender agreed to, amongst other things and subject to certain conditions, forbear from foreclosing on the Property until August 29, 2025.

L.      On August 8, 2025, Lender posted its "Notice of Substitute Trustee's Sale" (the "***Notice of Substitute Trustee Sale***") with the County Clerk of Travis County, Texas evidencing

Lender's intent to conduct a foreclosure sale of the Property on September 2, 2025, and on August 11, 2025, Lender delivered to the Obligors (as defined below) a notice of foreclosure sale regarding the Property and attaching the Notice of Substitute Trustee Sale.

M.      Borrower, Guarantors (all of the foregoing collectively referred to herein as the "*Obligors*" and each as an "*Obligor*"), and the Lender desire to enter into this Agreement regarding the limited forbearance as herein provided.

AGREEMENT:

NOW, THEREFORE, in consideration of the premises and mutual covenants herein contained, the parties hereto agree as follows:

ARTICLE I

Definitions

Section 1.1     Definitions.  All capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Loan and Security Agreement.  As used herein the following terms will have the following respective meanings:

"*Collateral*" has the meaning given such term in the Loan and Security Agreement and includes the Property.

"*Debtor Relief Law*" means (i) federal or state bankruptcy, insolvency or receivership laws now or hereafter existing or any other similar statute now or hereafter in effect; (ii) any federal or state law providing for the appointment of a receiver, trustee, custodian or conservator of all or any part of the assets of Borrower, any endorser of the Note, or any Guarantor; or (iii) an assignment for the benefit of creditors.

"*Effective Date*" means the date first appearing in the preamble of this Agreement.

"*Existing Defaults*" means, the failure by the Borrower to pay all remaining principal, interest, fees, costs and expenses owed by the Borrower to the Lender under the Loan Documents on May 10, 2025 (which amount remains outstanding as of the date of this Agreement).

"*Forbearance Expiration Date*" means the earlier of (a) 2:00 p.m. (Dallas, Texas time) on October 2, 2025, or (b) the date of first occurrence of a Forbearance Termination Event.

"*Forbearance Period*" shall mean the period commencing on the Effective Date and continuing through (but not beyond) 1:59 p.m. (Houston, Texas time) on the Forbearance Expiration Date, unless earlier terminated pursuant to the terms and provisions of this Agreement.

"*Forbearance Termination Event*" shall mean the occurrence of any of the following: (a) any representation or warranty made by Borrower or any other Obligor in

this Agreement shall be (or if any financial information delivered by any of them shall be) false, misleading or erroneous in any material respect (as determined by the Lender in its sole discretion) when made (or, in the case of financial information, as of the date deemed to have been made) or the failure of any condition precedent to the effectiveness of this Agreement to be satisfied completely and timely, (b) Borrower or any other Obligor shall fail strictly to perform, observe or comply with any covenant, agreement or term contained in this Agreement applicable to such Obligor, (c) any default or event of default (other than the Existing Defaults) shall occur under the Loan and Security Agreement or any other Loan Document, (d) Borrower or any other Obligor shall commence a voluntary proceeding seeking liquidation, reorganization, or other relief with respect to itself or its debts under any Debtor Relief Laws now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian, or other similar official of it or a substantial part of its property or shall consent to any such relief or to the appointment of or taking possession by any such official in an involuntary case or other proceeding commenced against it or shall make a general assignment for the benefit of creditors or shall take any corporate action to authorize any of the foregoing, or (e) an involuntary proceeding shall be commenced against Borrower or any other Obligor seeking liquidation, reorganization, or other relief with respect to it or its debts under any Debtor Relief Laws now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian, or other similar official for it or a substantial part of its property.

"***Foreclosure Proceedings***" means (a) judicial proceedings for the collection of amounts owed under the Loan and Security Agreement, the Note, and the other Loan Documents or by any Obligor, or the foreclosure of liens against the various items of Collateral securing the Obligations, (b) the nonjudicial foreclosure of any of the Collateral securing the obligations of Borrower in accordance with the terms of the applicable Loan Document and applicable law, or (c) a combination of clauses (a) and (b).

"***Loan Documents***" means the Loan and Security Agreement, the Note, the Guaranty, the Deed of Trust, the Financing Statements, this Agreement, the Plan and the Confirmation Order and all other loan and collateral documents executed by Borrower or any Obligor for the benefit of Lender in connection with the Loan and other Obligations, as such documents may be amended, restated or otherwise modified from time to time. Loan Documents includes all "Loan Documents" as defined in the Loan and Security Agreement.

Section 1.2  Acknowledgments and Waivers.  Borrower and each other Obligor acknowledge and agree that (a) the Existing Defaults continue as of the date of this Agreement, and (b) each of the Borrower and the other Obligors waives all rights to notice of (i) Existing Defaults or any other Events of Default, (ii) demand for payment of the Note and any other unpaid Obligations, (iii) notice of intent to accelerate, (iv) notice of acceleration, (v) notice of foreclosure on any Collateral, (vi) all other notices, and (vii) right to cure any Default or Event of Default, including without limit, the Existing Defaults.

Section 1.3  Request by Borrower and the Obligors.  Borrower and each other Obligor have requested that the Lender refrain for a limited time from exercising their remedies arising as a result of the Existing Defaults, including by foreclosing on the Collateral, except as set forth

herein, and the Lender are willing to grant such request subject to the terms and conditions of this Agreement.

ARTICLE II

Agreements

NOW, THEREFORE, in consideration of the premises and the mutual covenants, representations, warranties and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

Section 2.1    Agreement of the Lender.  Subject to the satisfaction of the terms and conditions of this Agreement, and so long as no Forbearance Termination Event shall have occurred, the Lender hereby agrees that it will not prior to the Forbearance Expiration Date foreclose on the Collateral, but nothing in this Agreement shall limit the Lender's right to post for foreclosure regarding Existing Defaults.  Upon receipt of the Forbearance Fee, the Lender shall withdraw the Notice of Substitute Trustee Sale.  Notwithstanding the foregoing, the agreement of the Lender pursuant hereto shall not constitute and shall not be deemed to constitute a waiver of the Existing Defaults or of any other Event of Default or Default under the Loan Documents, including, without limitation, a future Event of Default occurring for the same violation as the Existing Defaults.  On and after the Forbearance Expiration Date, the Lender's agreement hereunder to refrain from foreclosing on the Collateral shall terminate automatically without further act or action by Lender, the entire unpaid principal balance of the Note, all outstanding interest, fees, and expenses and any other outstanding Obligations, as described in the payoff letter attached as **Annex A** hereto (the "***Payoff Letter***"), will be immediately due and payable as of the Forbearance Expiration Date (it being acknowledged and agreed by the Obligors that the outstanding Obligations set forth in such Payoff Letter are subject to change for any legal fees, costs and expenses incurred by the Lender with respect to this Agreement, the Loan Documents or the exercise of the Lender's rights and remedies hereunder or thereunder from and after the date of this Agreement), and the Lender shall be entitled to exercise any and all rights and remedies available under the Loan Documents, at law, in equity, or otherwise without any further lapse of time, expiration of applicable grace periods, or requirements of notice, all of which are hereby expressly waived by Borrower and each other Obligor.

Section 2.2    Agreement of Obligors.    Borrower and each of the other Obligors acknowledge, understand, and agree:

(a)    Benefit.  Borrower and the other Obligors (and each of them) are receiving a direct, material benefit from the transactions contemplated by this Agreement.

(b)    Existing Defaults.  Borrower and the other Obligors acknowledge the existence and continuance of the Existing Defaults.

(c)    Acknowledgement of Debt.  Borrower and the other Obligors acknowledge that the amount owed to the Lender in satisfaction of all of their Obligations under the Loan Documents effective as of October 2, 2025 is as described in the Payoff Letter, which

Payoff Letter the Borrower and the Obligors acknowledge and agree is only effective upon execution of this Agreement and is subject to change for any legal fees, costs and expenses incurred by the Lender with respect to this Agreement, the Loan Documents or the exercise of the Lender's rights and remedies hereunder or thereunder from and after the date of this Agreement, as well as continued accruing interest and fees after August 29, 2025.

(d)     No Waiver.  The Lender has not waived any of its rights or remedies by reason of any prior decision by such Lender to refrain from exercising any such rights or remedies.

(e)     No Interference.  Neither Borrower nor any of the other Obligors will interfere with, object to, or take any action to prevent or delay any sale of any of the Loan to any other party (or any foreclosure or other collection action at and after the Forbearance Expiration Date).

(f)     Access to Collateral.  Borrower and each other Obligor agree that the Lender and its representatives and agents, upon three (3) business days' notice to Borrower, may from time to time enter any of Borrower's locations inspect and appraise any Collateral.

(g)     Reporting.  Except as otherwise specifically set forth in this Agreement, during the Forbearance Period, and notwithstanding any particular reporting requirements set forth in this Agreement except as otherwise set forth herein, all reporting obligations of Borrower under the Plan will continue and will be due on the respective dates for each reporting requirement under the Plan.

(h)     Interest.  The Borrower and the other Obligors acknowledge and agree that, commencing on May 10, 2025 until repayment in full of all amounts owed under the Note, the obligations under the Loan Documents and the Plan will accrue interest at the rate of 18% per annum.

(i)     Suspension of Certain Transactions.  Notwithstanding anything to the contrary in the Loan and Security Agreement, during the Forbearance Period (unless otherwise consented to in writing by the Lender), Borrower will not sell the Collateral (i) unless the Lender is afforded the opportunity to match or exceed the purchase price and all material terms including closing timing of any potential purchaser of the Collateral; and (ii) unless the Lender is paid the Payoff Amount (as defined in the Payoff Letter) before the Forbearance Expiration Date.

(j)     Deferral of Payments under Loan Documents.  Notwithstanding any provision to the contrary contained in the Plan, Note or the other Loan Documents, during the period beginning on the date of this Agreement through but not including the Forbearance Expiration Date, Lender and Borrower agree that payment of amounts due under the Plan, Note, or other Loan Documents that would otherwise be due and payable during such period shall instead be deferred until the Forbearance Expiration Date, at which time all such outstanding deferred amounts under the Loan Documents shall be due and payable in immediately available cash.

Section 2.3     Property Repairs.  Borrower represents and warrants to and covenants with Lender that the repairs to the Property occurring or in progress as of the date of this Agreement have been to date and will until completion be performed in a good and workmanlike manner, in strict accordance with applicable laws, rules, regulations and ordinances, in substantial conformance with any and all approved and/or permitted plans and specifications, and in a lien free manner.  All marina anchoring will be at least 10,000-pound anchoring per anchor and using 5/8" galvanized steel cable, unless professionally advised otherwise in which case Borrower will notify Lender.

Section 2.4     Conditions Precedent to This Agreement.  This Agreement will not become effective until the following conditions and all other conditions set forth herein have been satisfied (and upon such satisfaction, this Agreement shall be deemed to be effective as of the Effective Date):

(a)     Lender shall have received a counterpart of this Agreement executed by Borrower, each other Obligor and the Lender (which may be delivered by telecopy or pdf transmission); and

(b)     No later than 11:00 a.m. Austin, TX time on September 2, 2025, Lender shall have received payment of a forbearance fee in an amount equal to $60,000.00 (the "***Forbearance Fee***"), by wire transfer of immediately available funds to Lender, **and** a deposit in an amount equal to $50,000.00 ("***Repair Deposit***") to be held by Lender for the purposes of funding a deposit to begin marina repairs with Reliable Boat Docks or other reputable marina repair company approved by Lender. Lender and Borrower shall work together to approve a deposit contract with such approved company no later than September 5, 2025 at which time Lender shall release the Repair Deposit to the approved company.  The foregoing amounts were fully earned as of the date of this Agreement and shall be nonrefundable when paid.

Section 2.5     Representations and Warranties.  To induce the Lender to enter into this Agreement, Borrower and the Obligors each hereby represent and warrant to the Lender that (a) such party is duly organized, validly existing and in good standing under the laws of the state in which it was organized and formed, whether by incorporation, partnership, limited liability company, or otherwise, without limitation, and has the power and authority to perform its obligations under this Agreement and (b) the execution, delivery (by the officer signing the same) and performance of this Agreement have been duly authorized by all requisite action on the part of such party and do not and will not violate its organizational documents, agreements, and operating agreements, or other governance document or agreement of such party or any other agreement to which such party bound, or any law, rule or regulation, or any order of any Governmental Authority or arbitrator by which it or any of its properties is bound.

Section 2.6     Ratification of Loan Documents/Collateral.  Borrower and each other Obligor hereby acknowledge, ratify, reaffirm and agree that each of the Loan Documents and the first priority, perfected liens and security interests created thereby in favor of the Lender in the Collateral, are and shall remain in full force and effect and binding on Borrower and each other Obligor and are enforceable in accordance with their respective terms and applicable law.

Section 2.7    Remedies upon Forbearance Termination Event.  Borrower and each other Obligor shall notify the Lender in writing immediately and without any delay upon becoming aware of the occurrence of any Forbearance Termination Event, and upon the occurrence of a Forbearance Termination Event for which any of them have notified the Lender in writing, the Forbearance Period shall terminate without further notice or action by the Lender. The Lender shall be entitled immediately to institute Foreclosure Proceedings against any or all Collateral securing the Obligations and to exercise any and all the Lender's remedies available to it under the Loan Documents (including this Agreement), at law, in equity, or otherwise, without further notice, demand, presentment, notice of dishonor, notice of acceleration, notice of intent to accelerate, notice of intent to foreclose, notice of sale, notice of protest or other formalities of any kind, all of which are hereby expressly waived by Borrower and each other Obligor. Notwithstanding the foregoing provisions, if a Forbearance Termination Event should occur but for which no written notice thereof is given by Borrower or any Obligor to the Lender, then the Forbearance Period shall immediately terminate upon the date on which the event occurs that constitutes a Forbearance Termination Event, without further notice or action by the Lender, and the Lender (without further notice or delay) may proceed immediately to pursue all rights, and remedies described above immediately upon any such termination.  This provision does not relieve Borrower and the other Obligors of their respective obligations to notify the Lender in writing immediately upon such party becoming aware of the occurrence of a Forbearance Termination Event. **Notwithstanding anything to the contrary in this Agreement, the Lender shall accept (and shall waive any right to refuse) payment of the Payoff Amount (as defined in the Payoff Letter) on or prior to 2:00 p.m. (prevailing Central Time) on August 29, 2025.**

Section 2.8    Release and Consent.  **FOR GOOD AND VALUABLE SEPARATE CONSIDERATION (INCLUDING, WITHOUT LIMITATION, THE DIRECT BENEFIT EACH PARTY SIGNING BELOW REALIZES BY THE LENDER'S AGREEMENT TO FORBEAR FROM EXERCISING REMEDIES), EACH OF BORROWER AND THE OTHER OBLIGORS (EACH IN ITS OWN RIGHT AND ON BEHALF OF ITS INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS) (COLLECTIVELY, THE "RELEASING PARTIES") RELEASES, ACQUITS, AND FOREVER DISCHARGES THE LENDER AND ITS RESPECTIVE PAST AND PRESENT PARTNERS, MEMBERS, SHAREHOLDERS, MANAGERS, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS (COLLECTIVELY, THE "RELEASED PARTIES"), TO THE FULLEST EXTENT PERMITTED BY APPLICABLE STATE AND FEDERAL LAW, FROM ANY AND ALL ACTS AND OMISSIONS OF THE RELEASED PARTIES, AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, COUNTERCLAIMS, DEMANDS, CONTROVERSIES, COSTS, DEBTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, DAMAGES, OBLIGATIONS, LIABILITIES, OBJECTIONS, AND EXECUTIONS OF ANY NATURE, TYPE, OR DESCRIPTION WHICH THE RELEASING PARTIES HAVE AGAINST THE RELEASED PARTIES, INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE, GROSS NEGLIGENCE, USURY, CONSPIRACY, UNCONSCIONABILITY, DURESS, ECONOMIC DURESS, DEFAMATION, CONTROL, INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONSHIPS, CONFLICTS OF INTEREST, MISUSE OF INSIDER INFORMATION, CONCEALMENT, DISCLOSURE, SECRECY, MISUSE OF COLLATERAL, WRONGFUL RELEASE OF COLLATERAL, FAILURE**

**TO INSPECT, ENVIRONMENTAL DUE DILIGENCE, NEGLIGENT LOAN PROCESSING AND ADMINISTRATION, WRONGFUL SETOFF, VIOLATIONS OF STATUTES AND REGULATIONS OF GOVERNMENTAL ENTITIES, INSTRUMENTALITIES AND AGENCIES (BOTH CIVIL AND CRIMINAL), RACKETEERING ACTIVITIES, SECURITIES AND ANTITRUST LAWS VIOLATIONS, TYING ARRANGEMENTS, DECEPTIVE TRADE PRACTICES, BREACH OR ABUSE OF ANY ALLEGED FIDUCIARY DUTY, BREACH OF ANY ALLEGED SPECIAL RELATIONSHIP, COURSE OF CONDUCT OR DEALING, ALLEGED OBLIGATION OF FAIR DEALING, ALLEGED OBLIGATION OF GOOD FAITH, AND ALLEGED OBLIGATION OF GOOD FAITH AND FAIR DEALING, WHETHER OR NOT IN CONNECTION WITH OR RELATED TO ANY LOAN DOCUMENTS AND THIS AGREEMENT, THE LOAN AND SECURITY AGREEMENT, OR THE LENDING RELATIONSHIP AT LAW OR IN EQUITY, IN CONTRACT IN TORT, OR OTHERWISE, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED UP TO AND INCLUDING THE DATE OF THIS AGREEMENT EXCEPT AND TO THE EXTENT, BUT ONLY TO THE EXTENT, CAUSED BY ANY RELEASED PARTIES' GROSS NEGLIGENCE OR WILLFUL MISCONDUCT (THE "<u>RELEASED CLAIMS</u>"). THE RELEASING PARTIES FURTHER AGREE TO LIMIT ANY DAMAGES THEY MAY SEEK IN CONNECTION WITH ANY CLAIM OR CAUSE OF ACTION, IF ANY, TO EXCLUDE ALL PUNITIVE AND EXEMPLARY DAMAGES, DAMAGES ATTRIBUTABLE TO LOST PROFITS OR OPPORTUNITY, DAMAGES ATTRIBUTABLE TO MENTAL ANGUISH, AND DAMAGES ATTRIBUTABLE TO PAIN AND SUFFERING, AND THE RELEASING PARTIES DO HEREBY WAIVE AND RELEASE ALL SUCH DAMAGES WITH RESPECT TO ANY AND ALL CLAIMS OR CAUSES OF ACTION WHICH MAY ARISE AT ANY TIME AGAINST ANY OF THE RELEASED PARTIES.  THE RELEASING PARTIES REPRESENT AND WARRANT THAT NO FACTS EXIST WHICH COULD PRESENTLY OR IN THE FUTURE COULD SUPPORT THE ASSERTION OF ANY OF THE RELEASED CLAIMS AGAINST THE RELEASED PARTIES.  THE RELEASING PARTIES FURTHER COVENANT NOT TO SUE THE RELEASED PARTIES ON ACCOUNT OF ANY OF THE RELEASED CLAIMS, AND EXPRESSLY WAIVE ANY AND ALL DEFENSES THEY MAY HAVE IN CONNECTION WITH THEIR DEBTS AND OBLIGATIONS UNDER ANY LOAN DOCUMENTS AND THIS AGREEMENT.  THIS PARAGRAPH IS IN ADDITION TO AND SHALL NOT IN ANY WAY LIMIT ANY OTHER RELEASE, COVENANT NOT TO SUE, OR WAIVER BY THE RELEASING PARTIES IN FAVOR OF THE RELEASED PARTIES.**

Section 2.9    <u>No Obligation of the Lender</u>.  Borrower and the other Obligors hereby acknowledge and understand that upon the expiration or termination of the Forbearance Period, the Lender shall have the right to proceed to exercise any or all available rights and remedies, which may include foreclosure on the Collateral and/or institution of legal proceedings.  Except as otherwise provided herein, the Lender shall have no obligation whatsoever to extend the applicable maturity of the Obligations, waive any events of default or defaults, defer any payments, or further forbear from exercising its rights and remedies.

Section 2.10    <u>No Implied Waivers</u>.  No failure or delay on the part of the Lender in exercising, and no course of dealing with respect to, any right, power or privilege under this

Agreement, the Loan and Security Agreement or any other Loan Document shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege under this Agreement or any other Loan Document preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

Section 2.11   <u>Indemnification</u>.   **BORROWER AND THE OTHER OBLIGORS EACH HEREBY AGREES TO INDEMNIFY, DEFEND AND SAVE THE RELEASED PARTIES HARMLESS FROM ANY AND ALL CLAIMS, LOSSES, COSTS, DAMAGES, LIABILITIES, OBLIGATIONS AND EXPENSES, INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES (WHETHER INSIDE OR OUTSIDE COUNSEL IS USED) AND REASONABLE FEES OF OTHER PROFESSIONALS, INCURRED BY THE LENDER BY REASON OF ANY DEFAULT OR EVENT OF DEFAULT, IN DEFENDING OR PROTECTING THE LIENS WHICH SECURE OR PURPORT TO SECURE ALL OR ANY PORTION OF THE OBLIGATIONS, WHETHER EXISTING UNDER ANY LOAN DOCUMENTS, THE LENDING RELATIONSHIP OR OTHERWISE OR THE PRIORITY THEREOF, OR IN ENFORCING THE OBLIGATIONS OF BORROWER OR ANY GUARANTOR WHO HAS GUARANTEED ANY PORTION OF THE OBLIGATIONS OR ANY OTHER PERSON UNDER OR PURSUANT TO ANY LOAN DOCUMENT OR OTHERWISE, OR IN THE PROSECUTION OR DEFENSE OF ANY ACTION OR PROCEEDING CONCERNING ANY MATTER GROWING OUT OF OR CONNECTED WITH THE COLLATERAL, THE LOAN, OR ANY LOAN DOCUMENTS, <u>INCLUDING ANY CLAIMS, LOSSES, COSTS, DAMAGES, LIABILITIES, OBLIGATIONS, AND EXPENSES RESULTING FROM OR CAUSED IN WHOLE OR IN PART BY LENDER'S OWN NEGLIGENCE,</u> EXCEPT AND TO THE EXTENT, BUT ONLY TO THE EXTENT, CAUSED BY LENDER'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.**

Section 2.12   <u>Survival</u>.   All certifications, representations, warranties, indemnifications, and releases by Borrower and each of the other Obligors herein shall survive the execution and delivery of this Agreement, and no investigation by the Lender or any closing shall affect the right of the Lender to rely upon them.

Section 2.13   <u>Review and Construction of Documents</u>.   Borrower and the other Obligors each hereby acknowledges, and represents and warrants to the Lender, that (a) such party has consulted with legal counsel of its own choice and has reviewed this Agreement with its legal counsel, (b) such party has reviewed this Agreement and fully understands the effects thereof and all terms and provisions contained herein, (c) such party has executed this Agreement of its own free will and volition, and (d) this Agreement shall be construed as if jointly drafted by Borrower, the other Obligors, and the Lender.  The recitals contained in this Agreement shall be construed to be part of the operative terms and provisions of this Agreement.

Section 2.14   <u>Entire Agreement; Amendment</u>.   **THIS AGREEMENT EMBODIES THE FINAL, ENTIRE AGREEMENT BETWEEN THE PARTIES HERETO REGARDING THE LENDER'S FORBEARANCE WITH RESPECT TO ITS RIGHTS AND REMEDIES ARISING AS A RESULT OF THE EXISTING DEFAULTS AND SUPERSEDES ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL,**

**RELATING TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO. THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO.  The provisions of this Agreement may be amended or waived only by an instrument in writing signed by the parties hereto.  The Loan Documents continue to evidence the agreement of the parties with respect to the subject matter thereof.**

Section 2.15    Notices.  All notices, requests, demands and other communications under this Agreement or any other Loan Document to any Obligor shall be given in writing at the party's address set forth on the signature page(s) hereto, or such other address as may be designated by such Obligor pursuant to a notice given in accordance with Section Class 3(c)(2)(iv) of the Plan. All notices will be deemed received as set forth in Section Class 3(c)(2)(iv) of the Plan.

ARTICLE III

Miscellaneous

Section 3.1    Successors and Assigns.  This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective heirs, executors, legal representatives, successors and assigns, provided that neither Borrower nor any Obligor may assign any rights or obligations of such party under this Agreement without the prior written consent of the Lender.

Section 3.2    Tolling of Statutes of Limitation.  The parties hereto agree that all applicable statutes of limitations in respect to the Loan Documents shall be tolled and not begin running until the Forbearance Expiration Date.

Section 3.3    Arms-Length/Good Faith.    This Agreement has been negotiated at arms-length and in good faith by the parties hereto.

Section 3.4    Governing Law; Jurisdiction.  This Agreement shall be governed by and construed in accordance with the laws of the State of Arizona without giving effect to its principles or rules of conflict of laws to the extent such principles or rules would require or permit the application of the laws of another jurisdiction.  All disputes, claims, demands, actions, causes of action, suits or proceedings (collectively, "***Litigation***") by and among the parties to this Agreement shall be adjudicated, litigated, heard or tried, if at all, exclusively in the Bankruptcy Court, and each of the Lender, the Borrower and the Obligors hereby irrevocably consents to the jurisdiction of the Bankruptcy Court (and of the appropriate appellate courts therefrom) in any such Litigation and irrevocably waives, to the fullest extent permitted by law, any objection that it or he may now or hereafter have to the laying of the venue of any such Litigation in the Bankruptcy Court or that any such Litigation which is brought in the Bankruptcy Court has been brought in an inconvenient forum.  Process in any such Litigation may be served on any Party anywhere in the world, whether within or without the jurisdiction of the Bankruptcy Court.

Section 3.5    Interpretation.  Wherever the context hereof shall so require, the singular shall include the plural, the masculine gender shall include the feminine gender and the neuter and

vice versa.  The headings, captions and arrangements used in this Agreement are for convenience only and shall not affect the interpretation of this Agreement.

Section 3.6    Severability.  In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

Section 3.7    Counterparts.  This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which shall be an original and all of which taken together shall constitute one and the same agreement.  The signature of a party to any counterpart shall be sufficient to legally bind such party.  The Lender may remove the signature pages from one or more counterparts and attach them to any other counterpart for the purpose of having a single document containing the signatures of all parties.  Delivery of an executed counterpart of a signature page to this Agreement by facsimile, emailed portable document format ("pdf"), or tagged image file format ("tiff") or any other electronic means that reproduces an image of the actual executed signature page shall be effective as delivery of an original executed counterpart of a signature page to this Agreement.  Any party sending an executed counterpart of a signature page to this Agreement by facsimile, pdf, tiff or any other electronic means shall also send the original thereof to the Lender within five (5) days thereafter, but failure to do so shall not affect the validity, enforceability, or binding effect of this Agreement.

Section 3.8    Lender' Execution.  This Agreement will not be binding upon the Lender until it is fully executed by an authorized officer the Lender.

Section 3.9    Notice of Indemnification.  **THE PARTIES TO THIS AGREEMENT HEREBY ACKNOWLEDGE AND AGREE THAT THIS AGREEMENT CONTAINS INDEMNIFICATION OBLIGATIONS PURSUANT TO <u>SECTION 2.11</u> HEREOF.**

Section 3.10    Further Assurances.  Each Obligor agrees to execute, acknowledge, deliver, file and record such further certificates, instruments and documents, and to do all other acts and things, as may be requested by the Lender as necessary or advisable to carry out the intents and purposes of this Agreement.

[Remainder of Page Intentionally Left Blank.  Signature Pages Follow.]

Executed as of the date first written above.

**BORROWER:**

**WC PARADISE COVE MARINA, LP**



By: _____

Manager

**GUARANTOR:**

**NATIN PAUL**



By: _____

**CR_____ GROUP, LLC**



By: _____

Manager

**LENDER:**

**AC VIP PC MARINA DEBT, LLC**

By:_____
      Austin Cameron
      Manager

## Annex A

**Payoff Letter as of October 2, 2025**

See attached.

AC VIP PC MARINA DEBT, LLC
1119 Marina Point Drive
Strawn, Texas 76475
pcdebt@vipmarinas.com

September 1, 2025

WC Paradise Cove Marina, LP
814 Lavaca Street
Austin, TX 78701
Attn: Legal Department
Email: spaul@world-class.com

Re: Payoff of obligations with respect to that certain Loan and Security Agreement dated April 23, 2015 (as amended, the "Loan Agreement"), between WC Paradise Cove Marina, LP, a Texas limited partnership, as borrower ("Borrower"), and AC VIP PC Marina Debt, LLC, as lender ("Lender"), successor by assignment to Northwest Federal Credit Union.

Ladies and Gentlemen:

Reference is hereby made to the Loan Agreement. Capitalized terms used in this letter and not defined herein shall have the meanings ascribed to such terms in the Loan Agreement. Please be advised of the amounts set forth in the table below (the "Payoff Amount"), which constitute all outstanding indebtedness (including, without limitation, principal, interest and fees) and other obligations and liabilities owed to Lender by the Borrower under or in respect of the Loan Agreement (collectively, the "Obligations") as of the payoff date of October 2, 2025 (the "Repayment Date") other than unasserted indemnification and expense reimbursement obligations that by the express terms of the Loan Agreement survive the repayment of the Loans:

| | |
|---|---|
| Loan Principal | $4,860,638.40 |
| Loan Interest 5/1 - 5/10/25 | $16,202.13 |
| Agreed Default Fee with Lender Concession 5/11/25 | $97,157.08 |
| Legal Fees and Expenses as of 9/1/2025 | $44,594.28 |
| Loan Interest 5/11 - 10/2/25 | $351,132.52 |
| **Payoff Amount as of 10/2/25** | **$5,369,724.41** |

The Payoff Amount assumes receipt by the Lender, in accordance with the applicable wire instructions set forth below (the "Wire Instructions"), of immediately available funds (denominated in Dollars) in the amount of the Payoff Amount no later than 2:00 p.m. prevailing Central Time on the Repayment Date (the "Payoff Time").

Upon the receipt by Lender of the Payoff Amount, the Obligations shall be deemed satisfied in full and the liens and security interests of the Lender in any and all of the property of the Borrower shall be automatically released and terminated, including without limitation, any liens and security interests evidenced by Uniform Commercial Code financing statements and the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated April 23, 2015, granting Lender, as successor by assignment to Northwest Federal Credit Union, and its successors and assigns, a security interest and lien in the property described therein. Following such payment, Borrower (or its respective legal counsel) shall be authorized to file all UCC termination statements evidencing any security interest or lien held by

Lender in any property of Borrower in connection with the Payoff Amount. If requested by Borrower, Lender shall execute and deliver a termination of the Deed of Trust, at Borrower's sole cost and expense, and Borrower shall reimburse Lender for all legal fees, costs and expenses incurred by Lender in connection with the execution, delivery and termination of such Deed of Trust.

The Payoff Amount should be sent by wire transfer to the following account in accordance with the following Wire Instructions:

| | |
|---|---|
| Bank: | First United Bank |
| ABA Number: | 103100881 |
| Account Number: | 5684099 |
| Account Name: | AC VIP PC Marina Debt LLC |
| Reference: | PC Loan Payoff |

This letter shall terminate immediately and be of no further force or effect after 2:00 p.m. on the Repayment Date if the Payoff Amount is not received by Lender in accordance with the Wire Instructions set forth above by 2:00 p.m. prevailing Central Time on the Repayment Date. Upon such termination, the Borrower will be required to request and obtain a new payoff letter with respect to the Obligations.

This letter shall be governed by the internal laws of the State of Arizona, without regard to conflict of law principles. This letter may be executed in any number of separate counterparts, each of which shall, collectively and separately, constitute one agreement. Fax or electronic (including by email delivery in .pdf format) signatures shall have the same force and effect as if original signatures had been delivered.

Sincerely,

AC VIP PC MARINA DEBT, LLC,
a Texas limited liability company

By: _____
Name: Austin Cameron
Title:  Manager

17475342

Acknowledged and agreed to:

**BORROWER:**

WC Paradise Cove Marina, LP
a Texas limited partnership


By:_____
Name: Natin Paul
Title:  Manager

## **Exhibit A-8**

**Notice of Substitute Trustee's Sale**

14165918

# PORTER│HEDGES

**Eric M. English**
Partner
(713) 226-6612 Phone
(713) 226-6212 Fax
eenglish@porterhedges.com

1000 Main Street, 36th Floor
Houston, Texas 77002-6341
(713) 226-6000 Main
porterhedges.com

September 12, 2025

*Via Email, FedEx and Certified Mail RRR*

WC Paradise Cove Marina, LP
814 Lavaca Street
Austin, Texas 78701
Attention: Legal Department
Email: npaul@world-class.com
        legaldocs@world-class.com

Natin Paul
c/o WC Paradise Cove Marina, LP
401 Congress Ave., 33rd Floor
Austin, Texas 78701
Email: npaul@world-class.com
        legaldocs@world-class.com

Crestone Property Group, LLC
c/o WC Paradise Cove Marina, LP
401 Congress Ave., 33rd Floor
Austin, Texas 78701
Attention: Natin Paul
Email: npaul@world-class.com
        legaldocs@world-class.com

Natin Paul
c/o WC Paradise Cove Marina, LP
814 Lavaca Street
Austin, Texas 78701
Email: npaul@world-class.com
        legaldocs@world-class.com

Crestone Property Group, LLC
c/o WC Paradise Cove Marina, LP
814 Lavaca Street
Austin, Texas 78701
Attention: Natin Paul
Email: npaul@world-class.com
        legaldocs@world-class.com

Hayward PLLC
7600 Burnet Road, Suite 530
Austin, Texas 78757
Attention: Ron Satija
rsatija@haywardfirm.com

Re:    Notice of foreclosure sale regarding the following instruments, among others (collectively, the "***Loan Documents***"):

Credit Agreement:    Loan and Security Agreement dated as of April 23, 2015, between WC Paradise Cove Marina, LP, as borrower (the "***Borrower***"), and Northwest Federal Credit Union (the "***Prior Lender***"), as assigned to the Lender (hereinafter defined) by the Prior Lender, as modified by the *Debtor's Amended Plan of Reorganization* [Docket No. 126] filed on February 26, 2024 (the "***Plan***") and the *Findings of Facts, Conclusions of Law, and Order Confirming Amended Chapter 11 Plan* [Docket No. 133] entered on April 2, 2024 (the "***Confirmation Order***") in *In re WC Paradise Cove Marina, L.P.*, Case No. 23-10731 (CGB) (Bankr. W.D. Tex.)).

Note:    Promissory Note executed by Borrower in favor of the Prior Lender, in the original principal amount of Three Million Two Hundred Thousand and No/100 Dollars ($3,200,000.00), with interest thereon as set forth

17540021

WC Paradise Cove Marina, LP, et al.
September 12, 2025
Page 2 of 3

|  | therein, and all renewals, extensions, and modifications thereof, dated April 23, 2015 (as assigned to the Lender, the "***Note***"), as modified by the Plan and the Confirmation Order. |
|---|---|
| Deed of Trust: | Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (as assigned, the "***Deed of Trust***"), among the Borrower, as grantor, Rebecca S. Conrad, Esq., as trustee, and the Prior Lender, dated April 23, 2015, recorded under Clerk's File No. 2015073414 in the Official Public Records of Travis County, Texas, as assigned pursuant to the Assignment of Deed of Trust, assigning the Deed of Trust from the Prior Lender to Austin Cameron and Jenny Cameron (collectively, "***Cameron***"), dated February 25, 2022, recorded under Clerk's File No. 2022037034 in the Official Public Records of Travis County, Texas, and as further assigned pursuant to the Assignment of Deed of Trust, assigning the Deed of Trust from Cameron to AC VIP PC Marina Debt, LLC, a Texas limited liability company (the "***Lender***"), dated March 16, 2022, recorded under Clerk's File No. 2022051476 in the Official Public Records of Travis County, Texas, as modified by the Plan and the Confirmation Order. |
| Financing Statement: | UCC Financing Statement, filed with the Texas Secretary of State (Filing No. 25-0026363805) on or about May 30, 2025. UCC Financing Statement, filed as a fixture filing under Clerk's File No. 2015074141 in the Official Public Records of Travis County, Texas on or about May 13, 2015, as continued by the UCC Financing Statement Amendment, filed under Clerk's File No. 2019186897 in the Official Public Records of Travis County, Texas on or about November 26, 2019, and assigned to the Lender by the UCC Financing Statement Amendment, filed with the County Clerk, Travis County, Texas (Filing No. 2022083111) on or about May 6, 2022, as modified by the Plan and the Confirmation Order. |
| Substitute Trustees: | Eric M. English, David C. Martin, and Michael B. Dearman, each of whom may act alone or together (each a "***Substitute Trustee***" and collectively the "***Substitute Trustees***"). |

Ladies and Gentlemen:

This letter is written at the request and on behalf of our client, the Lender. As you are aware, under the terms of those certain Limited Forbearance Agreements dated as of June 2, 2025, June 30, 2025, August 1, 2025, and September 1, 2025, respectively, Borrower and all obligors of Borrower's indebtedness to Lender acknowledged the "Existing Defaults", which include without limitation the failure by Borrower to pay all remaining principal, interest, fees, costs and expenses owed by Borrower to Lender on May 10, 2025 (the maturity date as provided by the Plan). To date, Borrower has failed to pay all such sums to Lender.

WC Paradise Cove Marina, LP, et al.
September 12, 2025
Page 3 of 3

Accordingly, Lender has instructed the Substitute Trustee(s) to sell the real property, improvements, and personal property described in and mortgaged in the Deed of Trust at a nonjudicial foreclosure sale ("***Foreclosure Sale***"). A copy of the Notice of Substitute Trustee's Sale ("***Notice***") specifying the date, time, place, and terms of the Foreclosure Sale is enclosed with this letter.

Nothing contained in this letter is intended to waive any default or event of default; waive any rights, remedies, or recourses available to the Lender; or be an election of remedies resulting from any default that may exist with respect to the Loan Documents, the Plan and/or the Confirmation Order.

You may contact the undersigned regarding any questions that you may have, including the outstanding balance of the past due amounts on the Note as of any particular date. If you have any questions that you believe I can answer, you or your attorney may contact me at the telephone number or address listed below.

One purpose of this letter is to collect a debt, and any information obtained will be used for that purpose.  This letter is not intended to advise you of your legal rights and obligations, and we recommend that you obtain counsel of your choice to protect your interests. **Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

Very truly yours,

**PORTER HEDGES LLP**

By: /s/ *Eric M. English*
    Eric M. English
    David C. Martin
    Michael B. Dearman
    1000 Main Street, 36th Floor
    Houston, Texas 77002
    Telephone: (713) 226-6000
    Facsimile: (713) 226-6248
    eenglish@porterhedges.com
    dmartin@porterhedges.com
    mdearman@porterhedges.com

    **ATTORNEYS FOR THE CURRENT LENDER AND SUBSTITUTE TRUSTEES**

17540021

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

September 8, 2025

| | |
|---|---|
| Credit Agreement: | Loan and Security Agreement dated as of April 23, 2015, between WC Paradise Cove Marina, LP, as borrower (the "*Borrower*"), and Northwest Federal Credit Union (the "*Prior Lender*"), as assigned to the Current Lender (hereinafter defined) by the Prior Lender. |
| Note: | Promissory Note executed by Borrower in favor of the Prior Lender, in the original principal amount of Three Million Two Hundred Thousand and No/100 Dollars ($3,200,000.00), with interest thereon as set forth therein, and all renewals, extensions, and modifications thereof, dated April 23, 2015 (as assigned to the Current Lender, the "*Note*"). |
| Deed of Trust: | Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (as assigned, the "*Deed of Trust*"), among the Borrower, as grantor, Rebecca S. Conrad, Esq., as trustee, and the Prior Lender, dated April 23, 2015, recorded under Clerk's File No. 2015073414 in the Official Public Records of Travis County, Texas, as assigned pursuant to the Assignment of Deed of Trust, assigning the Deed of Trust from the Prior Lender to Austin Cameron and Jenny Cameron (collectively, "*Cameron*"), dated February 25, 2022, recorded under Clerk's File No. 2022037034 in the Official Public Records of Travis County, Texas, and as further assigned pursuant to the Assignment of Deed of Trust, assigning the Deed of Trust from Cameron to AC VIP PC Marina Debt, LLC, a Texas limited liability company (the "*Current Lender*"), dated March 16, 2022, recorded under Clerk's File No. 2022051476 in the Official Public Records of Travis County, Texas, as modified by the *Debtor's Amended Plan of Reorganization* [Docket No. 126] filed on February 26, 2024 (the "*Plan*") and the *Findings of Facts, Conclusions of Law, and Order Confirming Amended Chapter 11 Plan* [Docket No. 133] entered on April 2, 2024 (the "*Confirmation Order*") in *In re WC Paradise Cove Marina, L.P.*, Case No. 23-10731 (CGB) (Bankr. W.D. Tex.)). |
| Financing Statements: | UCC Financing Statement, filed with the Texas Secretary of State (Filing No. 25-0026363805) on or about May 30, 2025. UCC Financing Statement, filed as a fixture filing under Clerk's File No. 2015074141 in the Official Public Records of Travis County, Texas on or about May 13, 2015, as continued by the UCC Financing Statement Amendment, filed under Clerk's File No. 2019186897 in the Official Public Records of Travis County, Texas on or about November 26, 2019, and assigned to the Current Lender by the UCC Financing Statement Amendment, filed with the County Clerk, Travis County, Texas (Filing No. 2022083111) on or about May 6, 2022, as modified by the Plan and the Confirmation Order. |

17525821

| | |
|---|---|
| Property: | The real property, improvements, and personal property described in and mortgaged in the Deed of Trust (the "***Property***"). |
| Substitute Trustees: | Eric M. English, David C. Martin, and/or Michael B. Dearman, each of whom may act alone or together (each a "***Substitute Trustee***" and collectively the "***Substitute Trustees***"). |
| Substitute Trustees' Address: | c/o Porter Hedges LLP<br>1000 Main Street, 36th Floor<br>Houston, Texas 77002 |
| Date: | October 7, 2025 (the "***Date***") |
| Time: | The earliest time at which the sale of the Property (the "***Foreclosure Sale***") shall occur is 10:00 a.m. local time; the Foreclosure Sale shall begin at that time or not later than three hours after that time (the "***Time***"). |
| Place: | The west steps of the county courthouse, located at 1000 Guadalupe Street, Austin, Travis County, Texas 78701, or at such location as is otherwise designated for such sales by resolution(s) of the Commissioners' Court of Travis County, Texas (the "***Place***"). |
| Terms of Sale: | The Foreclosure Sale will be conducted as a public auction and the Property will be sold to the highest bidder for cash, except that the Current Lender's bid may be by credit against the indebtedness secured by the lien of the Deed of Trust (the "***Terms of Sale***"). |

In accordance with Texas Property Code section 51.0076, the undersigned attorney or authorized agent for the Current Lender has named and appointed, and by these presents does name and appoint the Substitute Trustees, each of whom may act alone or together, to act under and by virtue of the Deed of Trust and to succeed to all of the rights, titles, powers, and estates granted and delegated in the Deed of Trust to the original Trustee named therein and any previously appointed substitute trustees.

The Note has matured, Borrower has defaulted in various obligations under the Note, the Deed of Trust and the Plan, and Borrower has failed to perform certain obligations and to pay certain sums required under the Plan and/or required under the Confirmation Order. Because of such defaults, Current Lender, the owner and holder of the Note, has requested Substitute Trustee(s) to sell the Property.

The Deed of Trust encumbers both real and personal property. Formal notice is hereby given of Current Lender's election to proceed against and sell both the real property and any personal property described in the Deed of Trust in accordance with Current Lender's rights and remedies under the Deed of Trust and section 9.604(a) of the Texas Business and Commerce Code. Therefore, notice is given that on and at the Date, Time, and Place for the Foreclosure Sale described above, Substitute Trustee(s) will sell the Property in accordance with the Terms of Sale

2

described above, the Deed of Trust, and applicable Texas law.

If Current Lender passes the Foreclosure Sale, notice of the date of any rescheduled foreclosure sale will be reposted and refiled in accordance with the posting and filing requirements of the Deed of Trust and the Texas Property Code.

The Foreclosure Sale will be made expressly subject to any title matters set forth in the Deed of Trust, but prospective bidders are reminded that by law the Foreclosure Sale will necessarily be made subject to all prior matters of record affecting the Property, if any, to the extent that they remain in force and effect and have not been subordinated to the Deed of Trust. For the avoidance of doubt, the Foreclosure Sale will not cover any part of the Property that has been released of public record from the lien and/or security interest of the Deed of Trust. Prospective bidders are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any.

If the Foreclosure Sale does not result in full satisfaction of all of the indebtedness secured by the Deed of Trust, the lien and security interest of the Deed of Trust shall remain in full force and effect in respect of any of the Property not so sold and any and all other types of real and personal property covered by the Deed of Trust and not described herein (if any).

Pursuant to section 51.009 of the Texas Property Code, the Property will be sold **"AS IS," without any expressed or implied warranties, except as to the warranties (if any) provided for under the Deed of Trust.** Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the Property.

Pursuant to section 51.0075(a) of the Texas Property Code, Substitute Trustee(s) reserve(s) the right to set further reasonable conditions for conducting the Foreclosure Sale. Any such further conditions shall be announced before bidding is opened for the Foreclosure Sale. **Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEES IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

17525821

By: _____

Eric M. English
David C. Martin
Michael B. Dearman
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
eenglish@porterhedges.com
dmartin@porterhedges.com
mdearman@porterhedges.com

**ATTORNEYS FOR THE CURRENT
LENDER AND SUBSTITUTE TRUSTEES**

4

EXECUTED effective the 8th day of September, 2025.



_____
ERIC M. ENGLISH, Substitute Trustee


THE STATE OF TEXAS               §
                                 §
COUNTY OF TRAVIS                 §

    This instrument was acknowledged before me on the 8th day of September, 2025, by ERIC M. ENGLISH, Substitute Trustee.

ELAINE L MORELAND
129065964
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
JUNE 22, 2026

_____
Notary Public in and for the State of Texas

**COPY**
OFFICIAL PUBLIC RECORDS

Dyana Limon-Mercado, County Clerk
Travis County, Texas

202540901

Sep 12, 2025 11:47 AM
Fee: $2.00       GUYJ1

5

17525821