IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| WC PARADISE COVE MARINA, LP | ) ) | Case No. 25-11563-CGB |
| Debtor. | ) ) ) | |

**DEBTOR'S EMERGENCY MOTION (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POST-PETITION EXIT FINANCING, (B) GRANT SENIOR SECURED PRIMING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (C) UTILIZING CASH COLLATERAL; (II) MODIFYING THE AUTOMATIC STAY; AND (III) GRANTING RELATED RELIEF**

WC Paradise Cove Marina, LP (the "Debtor") files this *Emergency Motion (I) Authorizing the Debtor to (A) Obtain Post-Petition Exit Financing, (B) Granting Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilizing Cash Collateral; (II) Modifying the Automatic Stay; and (III) Granting Related Relief* ("Motion"), pursuant to sections 105, 362, 363, 364, 503(b), and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support thereof, the Debtor respectfully states as follows:

**Introduction**

1. The Debtor seeks entry of a final order authorizing post-petition exit financing from WM Capital (the "Exit Lender"). As described in further detail in the term sheet attached hereto as **Exhibit A** ("Term Sheet"), the proposed exit financing is a loan in the principal amount of $6,000,000.00 ("Loan"), secured by a first lien on the Debtor's fee simple interest in the property known as "Paradise Cove Marina" (the "Property") and a senior pledge of the equity interests in Debtor's management entity (the "Exit Financing"). The Proposed Exit Financing will bear interest of 14.5%, comprised of a minimum 7% current interest paid monthly and the remaining

47867903v.12

interest paid-in-kind accrued and compounded monthly. The proposed Exit Financing will include customary representations and warranties as well as customary Events of Default (as specifically defined in the Exit Financing Documents); it will further provide that upon the occurrence of certain Events of Default (including, for the avoidance of doubt, the failure of the Debtor to pay all sums due at maturity), the Exit Lender will be permitted to record a deed in lieu of foreclosure. Under the Exit Financing, the Debtor shall immediately request dismissal of this bankruptcy case following entry of the proposed final order (the "Order"); failure of the Debtor to obtain dismissal of this case is an event of default under the Exit Financing.

2. The proposed Exit Financing will enable the Debtor to pay the current lender in full as more fully set forth below in advance of the deadline and thus prevent the recording of a deed in lieu of foreclosure or a foreclosure of the Property. Pursuant to the Lift Stay Order, so long as the Current Lender is paid in full, the Current Lender shall not object to the relief sought in this Motion. It will also permit the Debtor to immediately move for dismissal of this case. Accordingly, entry into the proposed Exit Financing is an exercise of reasonable business judgment by the Debtor. It is fundamentally in the best interest of the Debtor's estate as it will enable the Debtor to retain the Property.

## Jurisdiction and Venue

3. This Court has jurisdiction under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this bankruptcy case and this motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4. The bases for relief requested include Bankruptcy Code sections 105(a), 362, 363, 364, 503, 506 and 507.

47867903v.12

**Background**

5. On October 7, 2025 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the title 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as a debtor and debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6. The Debtor owns fee simple interest in the Property, which is an approximately 267+/- acre parcel of real property and all submerged acreage at 17141 Rocky Ridge Road, Austin, TX 78734, known as "Paradise Cove Marina."

7. On November 5, 2025, the Court entered the Stipulation and Agreed Order Resolving *AC VIP PC Marina Debtor, LLC's Expedited Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and Emergency Motion to Compel Production of Documents* ("Lift Stay Order") [Docket No. 31]. Pursuant to the Lift Stay Order, the Debtor has until January 5, 2026 to repay the obligations due to AC VIP PC Marina Debtor, LLC (the "Current Lender") under the Loan Agreement and Security Agreement dated April 23, 2015 (as amended "Existing Loan Agreement"). The Current Lender asserts a first priority lien in the Property. Pursuant to the Lift Stay Order, should the Debtor fail to pay the Current Lender on or before January 5, 2026, the Current Lender may either record a deed in lieu of foreclosure or to proceed with non-judicial foreclosure of the Property (the "Lift Stay Deadline"). Pursuant to the Lift Stay Order, so long as the Current Lender is paid in full, the Current Lender shall not object to the relief sought in this Motion.

8. The Debtor seeks approval of the Proposed Exit Financing to enable it to timely repay its obligations to the Current Lender under the Loan Agreement prior to the Lift Stay Deadline and exit this bankruptcy case.

**The Proposed Exit Financing**

9. The Exit Lender (as defined herein) has agreed to loan the Debtor an aggregate principal amount of $6,000,000.00 as further described in the Term Sheet in Exhibit A. The proposed Exit Financing will bear interest at 14.5%, which is comprised of a minimum 7.0% current interest paid monthly, while the remaining interest will be paid in kind ("PIK interest"), accrued and compounded monthly. In addition, the Exit Financing will be secured by a first lien on the Property and a senior pledge of certain of the equity interests in the Debtor's ownership and management entities (none of whom are debtors in this proceeding). The proposed Exit Financing is subject to a minimum term of 18 months, with a maturity date of twenty-four (24) months from the date of closing. The Exit Financing will contain customary representations and warranties for similar transactions. It will also include customary representations and warranties as well as customary Events of Default (as specifically defined in the Exit Financing Documents). It will further provide that upon the occurrence of certain Events of Default (including, for the avoidance of doubt, the failure of the Debtor to pay all sums due at maturity), the Exit Lender will be permitted to record a deed in lieu of foreclosure (the form of which shall be acceptable to the Lender and agreed to by the Debtor as a condition of the Exit Financing and part of the Exit Financing Documents). In accordance with the terms of the Exit Financing, the Debtor shall immediately request dismissal of this bankruptcy case following entry of the proposed Order.

10. Upon entry of an order granting this Motion, the proceeds from the proposed Exit Financing will provide the Debtor with the necessary funds to pay the amounts due to the Current Lender under the Lift Stay Order and to exit this bankruptcy case. The proposed Exit Financing provides the liquidity necessary to preserve the value of the Property for the benefit of creditors and other stakeholders.

47867903v.12

11. In addition, the Proposed Exit Financing is a result of arm's-length negotiations between the Debtor and the Exit Lender. The Exit Lender is not an affiliate or insider of the Debtor, Natin Paul, or any entity owned or controlled by Natin Paul. In the past, affiliates of the Exit Lender have had lending relationships with other entities owned or controlled by Natin Paul. After having considered the best interests of its estate and all creditors and having identified a lender willing and able to provide the needed financing well before the Lift Stay Deadline, the Debtor has determined that the terms of the proposed Exist Financing are the best that Debtor is able to obtain.

12. Consistent with Bankruptcy Rule 4001(c)(1) and the DIP Guidelines, the pertinent terms of the Proposed Exit Financing and the proposed Exit Financing Order are as follows:[1]

    a. **Debtor:** WC Paradise Cove Marina, LP

    b. **Guarantors**: Loan shall be guaranteed by (i) Natin Paul and/or (ii) other relevant ownership and/or management entities of the debtor.

    c. **Lender**: WM Capital Partners, LLC and/or their subsidiaries and/or affiliates ("WM Capital" or "Exit Lender").

    d. **Transaction:** Transaction will be a loan to the Debtor secured by a first lien on the Property and a senior pledge of the equity interests in the certain ownership and/or management entities of the Debtor.

    e. **Property:** The fee simple interest 17141 Rocky Ridge Road, Ausitn, TX 78734, known as "Paradise Cove Marina;" including all 267 +/- acres and all submerged acreage owned by the Debtor; subject to title search, legal description review, and property survey review.

    f. **DIP Collateral**: Loan shall be secured by (i) valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all prepetition and post-petition property of the Debtor, including the Property (as further (as further defined in the Exit Financing Documents and the Order, the "DIP Liens") and (ii) a senior pledge of the equity interests in the certain ownership and/or management entities (as further described in the Exit Financing Documents, the "DIP Collateral").

---

[1] By necessity, this is only a summary of the terms of the Term Sheet and the proposed Exit Financing Order. To the extent that this summary conflicts with any term or provision of the Exit Financing Order, the Exit Financing Order controls.

47867903v.12

g. **Structure/Security**: Structure to include a mortgage/deed of trust, senior pledge of membership interests of the Debtor's GP entity, a deed in lieu of foreclosure, a guaranty, an order of the Court approving the financing, and a dismissal order prohibiting the Debtor from re-filing for bankruptcy protection unless and until the Debtor pays all obligations due to the Exit Lender under the Exit Financing Documents all as more fully set forth in a motion to dismiss and dismissal order; each in a form acceptable to the Exit Lender.

h. **Loan Amount**: Total principal amount of $6,000,000.00.

i. **Interest Rate**: 14.5% comprised of a minimum of 7.0% current interest paid monthly and the remaining interest paid-in-kind ("PIK interest") accrued and compounded monthly. The exact split of current interest and PIK interest will be determined at closing and shall sum to 14.5%. For the avoidance of doubt, the monthly interest will be calculated based on the Loan Amount and Interest Reserve balances.

j. **Interest Reserve**: Approximately $420,000 of additional proceeds will be advanced to pre-fund Debtor Cash Interest Reserve account ("Reserve") held at Lender's bank; the initial funded Reserve balance will accrue and capitalize interest each month at the same Interest Rate to be repaid with Loan at maturity. The Debtor will not be required to replenish Reserve account.

k. **Minimum Payment**: The Loan is subject to a minimum term of 18 months; *provided, however*, that the Debtor may repay the Loan early by paying to Lender an amount (the "Prepayment Fee") obtained by determining the net present value of all remaining scheduled interest payments calculated using a discount rate equivalent to 7.0%.

l. **Origination Fee**: 1.0% of the Loan Amount and Interest Reserve, $64,200. Paid at Closing.

m. **Exit Fee**: 1.0% of the Loan Amount and Interest Reserve, $64,200.00, paid at Loan repayment.

n. **Maturity Date**: 24 months from the closing of Loan.

o. **Extension Option**: One, 12-month extension option (the "Extension") with an extension fee of 1.0% of the Loan Amount and Interest Reserve ($64,200) to be paid at the Extension, provided that: (i) all current interest is paid at initial maturity, (ii) the Debtor has made a payment bringing the then-outstanding loan balance (inclusive of outstanding accrued PIK interest and fees) to $6,000,000, and (iii) the Debtor funds an interest reserve such that the outstanding balance remains at $6,000,000.

p. **Anticipated Closing Date**: On or before December 23, 2025.

q. **Guaranty**: Guarantors shall provide a full repayment guaranty.

  r. **Legal Expenses**: The Debtor is responsible for paying all legal expenses incurred by the Exit Lender relating to the transaction at the closing of Loan.

  s. **Debtor Representations and Warranties:** The Debtor's representations and warranties shall be usual and customary for transactions of this type.

  t. **Events of Default**: Customary for transactions of this size and type, including without limitation: failure to make payments when due; breach of covenants; breach of representations and warranties or guarantees; bankruptcy/insolvency; and judgments and attachments with customary limits and grace periods.

**A. Entry into the Proposed Exit Facility is an exercise of the Debtor's sound business judgment**

13. The Court should authorize the Debtor to enter into the proposed Exit Financing Documents[2] and obtain access to the Exit Financing so that the Debtor can pay the amounts due to the Current Lender under the Loan Agreement. The Debtor's timely payment to the Current Lender will enable it to continue to own and operate the Property, which benefits all of the Debtor's stakeholders. The Debtor requires the proposed Exit Financing to be able to pay the Current lender under the Lift Stay Order or the Current Lender will be permitted to record a deed in lieu or post for foreclosure of the Property.

14. Courts grant a debtor-in-possession considerable deference in acting in accordance with its business judgment to obtain post-petition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, or the policies underlying, the Bankruptcy Code. *See, e.g.*, *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment

---

[2] The Proposed Exit Financing Documents include but are not limited to (i) Promissory Note; (ii) Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Deed of Trust"); (iii) Special Warranty Deed, Bill of Sale, and Assignment of Leases and Contracts ("Deed in Lieu"); and (iv) proposed Dismissal Order.

47867903v.12

to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

15. To determine whether the business judgment standard is met, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of the debtor's authority under the Code"). Furthermore, in considering whether the terms of post-petition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003) (while many of the terms favored the new lenders, "taken in context, and considering the relative circumstances of the parties," the court found them to be reasonable); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil Co., Inc.)*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing a debtor may have to enter into "hard bargains" to acquire funds for its reorganization). The Court may also appropriately take into consideration non-economic benefits to the Debtor offered by a proposed post-petition facility. For example, in *In re ION Media Networks, Inc.*, the bankruptcy court for the Southern District of New York held that:

> Although all parties, including the Debtors and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. *Relevant features of the financing must be evaluated, including noneconomic elements such*

8

47867903v.12

> as the **timing and certainty of closing**, the impact on creditor constituencies and the likelihood of a successful reorganization.

*In re ION Media Networks, Inc.*, No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009) (emphasis added).

16. The Debtor's determination to move forward with the proposed Exit Financing is an exercise of its sound business judgment. The proposed Exit Financing will allow the Debtor to fulfill the legitimate interests of all stakeholders in this case by repaying its obligations to the Current Lender under the Loan Agreement by the deadline in the Lift Stay Order. That is the only way the Debtor will retain ownership of the Property. In addition, the Debtor's entry into the Exit Financing will permit it to exit this bankruptcy case and request dismissal.

17. The Debtor negotiated the Proposed Exit Financing and the Proposed Exit Financing Documents with the Exit Lender in good faith and at arm's-length. The Debtor believes it has obtained the best financing available under the circumstances. Affiliates of the Exit Lender have had lending relationships with other entities owned or controlled by Natin Paul; the Debtor believes that the Exit Lender is able and willing to close the Exit Financing under the timing required pursuant to the Lift Stay Order.

18. The Debtor should be authorized to grant liens under Bankruptcy Code section 364(c) to secure the Proposed Exit Financing. The Debtor proposes to obtain financing under the proposed Exit Facility by granting the Exit Lender the DIP Liens—valid, perfected, enforceable, and nonavoidable priming liens on and security interests in the Property and all the other assets of the Debtor, all as described more fully in the Proposed Exit Financing Documents. The liens securing the Debtor's obligations to the Current Lender under the Loan Agreement will be extinguished nearly contemporaneously with the funding of the Proposed Exit Financing through payment to the Current Lender.

19. Liens on encumbered and unencumbered assets are a common feature of post-petition financing facilities and are a necessary feature here to provide security for the proposed financing. The statutory requirement for obtaining post-petition credit under section 364(c) is a finding, made after notice and hearing, that a debtor is "unable to obtain unsecured credit allowable under Section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 364(c). *See In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under Bankruptcy Code section 364(c) is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

20. Courts have articulated a three-part test to determine whether a debtor is entitled to financing under Bankruptcy Code section 364(c). Specifically, courts look to whether, as a matter of ordinary commercial lending practice, no lender would provide financing to an entity like the Debtor on an unsecured basis but would in all events insist upon being secured by a first priority lien on the Property and the Debtor's other available assets. Absent the proposed Exit Financing, based on the entry of the Lift-Stay Stipulation, the Current Lender would be in a position to either record a deed in lieu of foreclosure or foreclose on its lien on the Property if not paid in full on or before the Lift Stay Deadline, in which case the Debtor would lose the Property. Conversely, if the Debtor's entry into the proposed Exit Financing is approved, then the Debtor will be able to repay its obligations under the Loan Agreement, retain ownership of the Property, and exit this bankruptcy case.

**B.     The Debtor has not identified any more favorable alternative to the Proposed Exit Financing**

21. A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) of the Bankruptcy Code. *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Plabell Rubber*

10

*Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also In re Snowshoe Co.*, 789 F.2d at 1088 (demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met); *In re Ames Dep't Stores*, 115 B.R. at 37–39 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).

22. As noted above, the Debtor does not believe that a more favorable alternative to the proposed Exit Financing Facility is reasonably available considering, among other factors, the impending Lift Stay Deadline. Therefore, the Debtor submits the requirement of Bankruptcy Code section 364 that alternative credit on more favorable terms be unavailable to the Debtor is satisfied considering, among other things, the upcoming Lift Stay Deadline.

C. **The Exit Lender should be deemed a good faith lender under Bankruptcy Code section 364(e).**

23. Bankruptcy Code section 364(e) protects a good faith lender's right to collect on loans extended to a debtor, and its rights in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted,

11

47867903v.12

> to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

24. The proposed Exit Financing offers the best and only terms on which to obtain needed post-petition financing and is the result of arm's-length, good faith negotiations between the Debtor and the Exit Lender. The terms and conditions of the proposed Exit Financing Documents are fair and reasonable, and the Debtor shall use the proceeds of the proposed Exit Financing only for purposes that are permissible under the Bankruptcy Code. Furthermore, no consideration is being provided to any party to the proposed Exit Financing other than as described herein and in the Exit Financing Documents. Accordingly, the Court should find that the Exit Lender is a "good faith" lender within the meaning of Bankruptcy Code section 364(e) and is entitled to all the protections afforded by that section.

**D.  The automatic stay should be modified on a limited basis.**

25. The proposed Exit Financing Order provides for certain modifications to the automatic stay provisions of Bankruptcy Code section 362. Stay modifications of this kind are ordinary and standard features of debtor-in-possession financing arrangements and, in the Debtor's business judgment, are reasonable and fair under the circumstances of the Chapter 11 Case. *See, e.g.*, *In re Milacron Inc.*, No. 09- 11235 (JVA) (Bankr. S.D. Ohio Apr. 10, 2009) (modifying automatic stay to permit DIP lender to exercise rights under the DIP Documents); *see also In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Sept. 29, 2019) (terminating automatic stay after an event of default on an interim basis); *In re Charming Charlie LLC*, No. 19-11534 (CSS) (Bankr. D. Del. July 12, 2019) (terminating automatic stay after a default or event of default and a notice period); *In re Oreck Corporation*, No. 13-04006 (KML) (Bankr. M.D. Tenn. June 12, 2013)

47867903v.12

(terminating automatic stay after a default or event of default and a notice period); *In re James River Coal Co.*, No. 03- 04095 (MFH) (Bankr. M.D. Tenn. Mar. 26, 2003) (same).

## II. AUTHORIZATION SHOULD BE GRANTED TO PAY THE SECURED DEBT ENCUMBERING THE PROPERTY

26. The Debtor requests entry of an order authorizing the Debtor to use the proceeds of the proposed Exit Financing to repay its obligations under the Loan Agreement and as permitted under the Order. Without such authority, the Exit Lender will not enter into the Exit Financing.

**A.** **Bankruptcy Code sections 105(a) and 363 empower the Court to authorize the disbursement of funds**.

27. Under Bankruptcy Code sections 105 and 363 and Bankruptcy Rule 6004, a debtor may be authorized to use property of the estate, including disburse the proceeds from a refinancing. In addition, Bankruptcy Code section 363 authorizes a debtor to use cash collateral either with the consent of each entity that has an interest in such cash collateral or with a court order authorizing such use. 11 U.S.C. § 363(b)(2).

28. The proceeds of the Proposed Exit Financing are cash collateral. Courts routinely authorize debtors to disburse encumbered funds to entitled secured creditors. Such disbursements minimize the continuing harm to creditors from unnecessary delays in payment and serve to recognize the primacy of a secured creditor's right to the proceeds of that creditor's collateral.

29. In this case, the Debtor seeks approval of the Proposed Exit Financing in debtor-in-possession financing. Upon approval of this motion, authorization and closing of the proposed Exit Financing, nothing will remain to administer in this bankruptcy case except to distribute the proceeds of the proposed Exit Financing to repay the Debtor's secured obligations under the Existing Loan Agreement in the payoff amount ($5,623,515.68) ("Payoff Amount") and the ad valorem taxes due for both 2024 (at least $77,418.16) and coming due in 2025 (at least $58,058.85) (the "Property Taxes"). Under Bankruptcy Code sections 105(a) and

13

363, therefore, the Debtor requests authority to distribute the proceeds and cash on hand to creditors, in each case, in accordance with the Order.

30. Additionally, there is no further or other need for adequate protection of the Current Lender's interest in the Property. As set forth above, the Debtor shall use the proceeds of the Proposed Exit Financing in the Payoff Amount to repay in full the Debtor's obligations under the Existing Loan Agreement to the Current Lender.

**B. Bankruptcy Code section 506(a) empowers the Court to determine the amount of the Current Lender's secured claim.**

31. For the Debtor to distribute funds to the Current Lender in connection with the proposed Exit Financing, the Court must determine the amount of the Current Lender secured claim.

32. By operation of section 506(a), "an allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a). Any portion of the claim that exceeds the value of such creditor's interest is an unsecured claim. *Id.* Bankruptcy Code section 506(d) then voids any lien to the extent it secures a claim against the debtor that is not an allowed secured claim. 11 U.S.C. § 506(d). The purpose of section 506(a) is to "fix[ ] the value of a secured creditor's legal entitlements associated with its security interest while avoiding the enforcement process itself so that the property may be used or disposed of in a manner consistent with the goals of the Bankruptcy Code." 4 Collier on Bankruptcy ¶ 506.03[4][a][ii] (Richard Levin & Henry J. Sommers eds. 16th ed.).

33. As summarized above, the Debtor and the Current Lender agree on the Payoff Amount, subject to final agreement on the amount owed for the Current Lender's reasonable

attorneys' fees and expenses as set forth in the Lift Stay Order $5,623,515.68 (the "<u>Current Lender Secured Claim</u>").

### III. APPROVAL OF THE PROPOSED EXIT FACILITY ON AN EXPEDITED BASIS

34. As set forth above, Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral under Bankruptcy Code section 363 or to obtain credit under Bankruptcy Code section 364 may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is empowered to conduct an expedited hearing on such a motion and to authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

35. Considering the Lift Stay Deadline, the Debtor respectfully requests that the Court schedule and conduct an expedited hearing on the motion and authorize the Debtor to obtain credit under the terms contained in the proposed Exit Financing Documents on an emergency and final basis.

### **Waiver of Bankruptcy Rule 6004(h)**

36. To permit the immediate consummation of the proposed Exit Financing and the repayment of the Debtor's obligations to the Current Lender under the Loan Agreement prior to the Lift Stay Deadline, which could occur on January 6, 2026, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies the Bankruptcy Rules and that the Debtor has established cause to waive the 14-day stay under Bankruptcy Rule 6004(h) (to the extent applicable) for the relief requested herein.

### **Conclusion**

The Debtor respectfully requests that this Court enter the proposed Exit Financing Order, in substantially the form attached hereto as and grant the Debtor such other and further relief as the Court deems appropriate.

47867903v.12

Dated: December 12, 2025

/s/ *Ron Satija*
**HAYWARD PLLC**
Ron Satija (TX Bar No. 24039158)
7600 Burnet Rd., Suite 530
Austin, TX 78757
Tel/Fax: (737) 881-7102
Email: rsatija@haywardfirm.com

*Counsel for Debtor and Debtor in Possession*

47867903v.12

**Certificate of Service**

This is to certify that on the 12th day of December 2025, or within one business day thereof, I caused a true and correct copy of the foregoing to be served via the CM/ECF notification system for the Western District of Texas upon the parties listed below, and via U.S. Mail, postage prepaid upon the parties listed on the attached Service List.

WC Paradise Cove Marina, LP
814 Lavaca Street
Austin, TX 78701

AC VIP PC Marina Debt, LLC
Eric English
**Porter Hedges LLP**
1000 Main Street, 36th Floor
Houston, TX 77002
Email: eenglish@porterhedges.com

WM Capital Partners, LLP
Jennifer F. Wertz
Beau H. Butler
**Jackson Walker LLP**
100 Congress Avenue, Suite 1100
Austin, TX 78701
Email: jwertz@jw.com
Email: bbutler@jw.com

U.S. Trustee Office
903 San Jacinto Blvd., Room 230
Austin, TX 78701

/s/ *Ron Satija*
Ron Satija

47867903v.12