IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | § | |
|---|---|---|
| In re: | § | Case No. 25-11563 |
| | § | |
| WC PARADISE COVE MARINA, LP | § | Chapter 11 |
| | § | |
| Debtor. | § | |
| | § | |

**AC VIP PC MARINA DEBT, LLC'S RESPONSE AND RESERVATION OF RIGHTS TO DEBTOR'S EMERGENCY MOTION (I) AUTHORIZING DEBTOR TO (A) OBTAIN POST-PETITION EXIT FINANCING, (B) GRANT SENIOR SECURED PRIMING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (C) UTILIZING CASH COLLATERAL; (II) MODIFYING THE AUTOMATIC STAY; AND (III) GRANTING RELATED RELIEF**
**[Relates to Docket No. 45]**

AC VIP PC Marina Debt, LLC ("**AC VIP**" or "**Lender**"), a secured creditor of the debtor (the "**Debtor**") in the above-captioned bankruptcy case (the "**Bankruptcy Case**") and a party in interest in this chapter 11 proceeding, files this response and reservation of rights (the "**Response**") to the Debtor's *Emergency Motion (I) Authorizing the Debtor to (A) Obtain Post-Petition Exit Financing, (B) Granting Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilizing Cash Collateral; (II) Modifying the Automatic Stay; and (III) Granting Related Relief* [Docket No. 45] (the "**Exit Financing Motion**"), and in support of the Response, respectfully states as follows:

## PRELIMINARY STATEMENT

1. AC VIP does not oppose the Exit Financing Motion to the extent that it results in full payment of the amounts owed under the Loan Documents (as defined below) in advance of January 6, 2026, the date on which AC VIP may record the deed in lieu of foreclosure or hold the noticed foreclosure sale, all as more fully set forth in the Stipulation and Agreed Order (as defined

1

18059958

below). However, the Debtor owes AC VIP amounts in addition to what is set forth in the Exit Financing Motion and the proposed order attached thereto, particularly for legal fees and expenses incurred by AC VIP in connection with the Loan Documents and the enforcement and protection of AC VIP's rights under such documents. Therefore, the relief requested in the Exit Financing Motion should only be granted if the order provides that the Stipulation and Agreed Order remains in effect and that AC VIP may exercise its rights thereunder unless AC VIP is paid everything that is owed under the Loan Documents before January 6, 2026.

## BACKGROUND

**A. The Loan**

2. The Debtor is indebted to the Lender under various agreements and instruments, including without limitation pursuant to that certain Loan and Security Agreement dated April 23, 2015 (as amended from time to time, including by the Plan and Confirmation Order (as defined below), the "***Loan Agreement***"), between the Debtor and the Lender, successor by assignment to Northwest Federal Credit Union, pursuant to which the Lender loaned (as amended and extended from time to time, including pursuant to the Plan and Confirmation Order, the "***Loan***") the original principal amount of Three Million Two Hundred Thousand and No/100 Dollars ($3,200,000.00) to the Debtor. Such Loan is evidenced by that certain Promissory Note dated April 23, 2015 (the "***Note***") and secured by, among other things, the collateral (the "***Property***") as more particularly described in that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated April 23, 2015 by the Debtor, as grantor, in favor of the Lender, as beneficiary, and assigned to the Lender on March 16, 2022 (as amended, the "***Deed of Trust***").

3. The Loan obligations are secured by: (i) UCC Financing Statement, filed with the Texas Secretary of State (Filing No. 15-0027360903) on or about August 17, 2015, as continued

by the UCC Financing Statement Amendment, filed with the Texas Secretary of State (Filing No. 20-00069182) on or about February 20, 2020, and assigned to the Lender by the UCC Financing Statement Amendment, filed with the Texas Secretary of State (Filing No. 22-00225713) on or about May 3, 2022, as modified by the Plan and the Confirmation Order; and (ii) UCC Financing Statement, filed as a fixture filing under Clerk's File No. 2015074141 in the Official Public Records of Travis County, Texas on or about May 13, 2015, as continued by the UCC Financing Statement Amendment, filed under Clerk's File No. 2019186897 in the Official Public Records of Travis County, Texas on or about November 26, 2019, and assigned to the Lender by the UCC Financing Statement Amendment, filed with the County Clerk, Travis County, Texas (Filing No. 2022083111) on or about May 6, 2022, (iii) UCC Financing Statement, filed with the Texas Secretary of State (Filing No. 25-0026363805) on or about May 30, 2025, each as may be modified by the Plan and the Confirmation Order ((i) and (iii) in this paragraph, the "***Financing Statements***").

4. The Loan is guaranteed by Crestone Property Group, LLC, a Texas limited liability company, and Natin Paul, an adult individual (collectively, the "***Guarantors***", and together with the Debtor, the "***Obligors***"), pursuant to those certain Unconditional and Continuing Guaranty and Subordination Agreements, as amended, each dated April 23, 2015 (collectively, the "***Guaranty***").

**B. The Prior Bankruptcy Case**

5. Late on September 4, 2023, the day before the scheduled foreclosure sale, the Debtor filed its voluntary petition for relief under the Bankruptcy Code. The case was entitled *In re WC Paradise Cove Marina, LP*, Case No. 23-10731 (CGB) (Bankr. W.D. Tex.) (the "***Prior Bankruptcy Case***").

18059958

6. As fully explained in the Lift Stay Motion, as of September 4, 2023, the amount due under the promissory note in favor of Northwest Federal Credit Union (the "**Prior Lender**") was in excess of $4,125,000 (the "**Note**"). The Debtor, which is owned and controlled by Natin Paul, owns a marina and related improvements on Lake Travis, Texas. AC VIP is the holder of a promissory note made by the Debtor and secured by the Debtor's real property, improvements, and personal property (collectively, the "**Property**").

7. During the course of the Prior Bankruptcy Case, the Debtor and AC VIP negotiated a consensual plan of reorganization [Docket No. 126] (the "**Plan**"), which was confirmed by the Court on April 2, 2024 [Docket No. 133] (the "**Confirmation Order**", and together with the Note, Loan Agreement, Deed of Trust, Financing Statements, and the Plan, the "**Loan Documents**"). The Plan provided that the Debtor would make monthly interest payments of 12% regular interest until the new maturity date on May 10, 2025. *See* Plan at 16. The Plan specified that the Debtor would either sell or refinance the Property in order to pay AC VIP in full on or before the Maturity Date (as defined in the Plan).

**C. The Current Bankruptcy Case**

8. The Debtor filed its voluntary petition for relief under the Bankruptcy Code on October 7, 2025 during the duly noticed substitute trustee's sale for the Property. This is the Debtor's second bankruptcy case in two years.

9. In the Prior Bankruptcy Case, the Debtor claimed that it needed time to finalize a sale or a refinancing. Pursuant to the Plan in the Prior Bankruptcy Case, the Debtor has had approximately 18 months after confirmation to accomplish a sale or refinancing. That did not occur. The Debtor defaulted on the Note, the Plan, and the other Loan Documents. Despite several

4

18059958

limited forbearance agreements between May 2025 and October 2025, the Debtor did not refinance or sell the Property as it represented it would.

10. On September 12, 2025, AC VIP posted its Notice of Substitute Trustee's Sale with the County Clerk of Travis County Texas, evidencing AC VIP's intent to conduct a foreclosure sale on the Property on October 7, 2025. On September 12, 2025, AC VIP delivered Notice of the foreclosure sale attaching the Notice of Substitute Trustee's Sale to the Debtor and Guarantors. The substitute trustee's sale commenced on October 7, 2025 at 10:00 a.m. (prevailing Central Time), and the Debtor commenced this Bankruptcy Case shortly after. As of October 7, 2025, the amount due and owing under the Note was not less than $5,389,596.24, which continues to accrue default interest at a rate of 18% per annum, and fees and expenses.

11. On October 14, 2025, AC VIP filed *AC VIP PC Marina Debt, LLC's Expedited Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. 362(d)* [Docket No. 8] (the "**Lift Stay Motion**").

12. After extensive negotiations between the Debtor and AC VIP, on November 5, 2025, the Court entered the *Stipulation and Agreed Order Resolving AC VIP PC Marina Debt LLC's Expedited Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. 362(d) and Emergency Motion to Compel Production of Documents* [Docket No. 31] (the "**Stipulation and Agreed Order**"), which provided the Payoff Amount (as defined in the Stipulation and Agreed Order), subject to the continued accrual of "per diem interest, … and legal fees and expenses until the earlier of payment in full of the Payoff Amount, the recordation of the deed in lieu of foreclosure, or the completion of the foreclosure sale." Stipulation and Agreed Order, ¶ 2. The Stipulation and Agreed Order further provided that,

> Lender is permitted, at its option, to (i) record the Deed in Lieu not earlier than January 6, 2026, (ii) post and notice the Property for a non-judicial foreclosure and

18059958

conduct a foreclosure sale to occur not earlier than January 6, 2026, or (iii) take the actions in both (i) and (ii). If Lender elects to conduct a foreclosure sale, Lender shall, and is permitted to take all actions to, provide notice of such foreclosure pursuant to TEX. PROP. CODE § 51.002. If Lender elects to record the Deed in Lieu, the recordation of the Deed in Lieu shall be in full and final satisfaction of the Payoff Amount.

Stipulation and Agreed Order, ¶ 4.

13. On November 6, 2025, the Court entered the *Interim Order Granting Debtor's Motion for Authority for the Debtor to Use Cash Collateral and Granting Related Relief* (Docket No. 33), and on December 3, 2025, the Court entered the *Agreed Final Order Granting Debtor's Motion for Authority for the Debtor to Use Cash Collateral and Granting Related Relief* (Docket No. 42) (the "**Final Cash Collateral Order**"). Because of prepetition transfers of substantial cash collateral from the Debtor to WC South Congress Square LLC, an affiliate of the Debtor, AC VIP requires that the Interim and Final Cash Collateral Orders include the following term: "ORDERED that the Debtor shall not make any transfer or payment to any insider or affiliate. All rights to avoid any prepetition transfers to insiders or affiliates are expressly preserved". Final Cash Collateral Order, at 2. Despite the clear order of the Court, the Debtor continued to make transfers of cash collateral to WC South Congress Square, including a $15,000 transfer on November 14, 2025.[1] The prohibition on such transfers is unequivocal, and the Debtor has failed to even provide a contractual basis for the transfers.

## RESPONSE AND RESERVATION OF RIGHTS

14. As the Debtor acknowledges, it must pay AC VIP all amounts owed under the Loan Documents in advance of January 6, 2026, otherwise AC VIP is entitled to exercise all remedies provided in the Stipulation and Agreed Order. *See* Exit Financing Motion, ¶¶ 2, 20. The Loan

---

[1] This is in addition to the $194,000.00 in prepetition transfers from the Debtor to WC South Congress Square between May 2025 and August 2025 alone.

6

Documents expressly require the Debtor to pay all attorneys' fees and expenses incurred by AC VIP in connection with enforcing its rights under the Loan Documents. AC VIP has been required to undertake substantial efforts to enforce its rights, including but not limited to:

- Addressing the Debtor's repeated failure to sell or refinance the Property;
- Negotiating and documenting multiple forbearance agreements;
- Preparing and posting multiple foreclosure sales;
- Preparing for and attending a foreclosure sale in October 2025, which was discontinued when the Debtor filed this chapter 11 case during the sale;
- Preparing and filing the Lift Stay Motion;
- Preparing and serving discovery requests for the Lift Stay Motion;
- Preparing for a contested hearing on the Lift Stay Motion;
- Negotiating and documenting the Stipulation and Agreed Order; and
- Negotiating the use of cash collateral.

AC VIP agrees with the proposed order that nothing in the Debtor's Exit Financing Motion or any order granting the relief requested in such motion should "modify, limit, or affect, in any way, the relief previously granted by the Court in, or the duties and obligations of the parties under, the [Stipulation and Agreed Order]. The consummation of the Exit Financing and the repayment of the Existing Loan Agreement to the Current Lender shall be completed on or before the Payoff Deadline …, in a simultaneous closing." Docket No. 45-1, ¶ 5. For the avoidance of doubt, the relief requested in the Exit Financing Motion and in the proposed order attached thereto (including the granting of priming liens) should not become effective until AC VIP is paid in full all amounts owed to it under the Loan Documents.

7

18059958

15. The total amount due under the Loan Documents as of December 17, 2025, and not including any additional legal fees and expenses and any other unasserted indemnification obligations, is $5,635,774.45 as set forth below:

| | |
|---|---:|
| Loan Principal | $4,860,638.40 |
| Loan Interest 5/1 - 5/10/25 | $16,202.13 |
| Agreed Default Fee with Lender Concession 5/11/25 | $97,157.08 |
| Legal Fees and Expenses[2] | $171,325.28 |
| Loan Interest 5/11 – 12/17/25 | $490,451.57 |
| **Payoff Amount as of 12/17/25** | **$5,635,774.45** |

The per diem interest from and following December 17, 2025 is $2,454.80. Exhibit B to the proposed order attached to the Exit Financing Motion provides that the amount payable to AC VIP is $5,623,515.68 under the Stipulation and Agreed Order, which is less than the amount set forth above. *See* Docket No. 45-3. The Stipulation and Agreed Order provided that,

> Debtor and Lender agree the payoff letter attached [to the Stipulation and Agreed Order] sets forth the Payoff Amount (as defined in the Payoff Letter), which constitutes all outstanding indebtedness (including, without limitation, unpaid principal balance of the Note, all outstanding interest, fees, and expenses) and other obligations and liabilities owed to Lender by Borrower under or in respect to the Loan Agreement as of the date of the Payoff Letter, other than unasserted indemnification and expense reimbursement obligations that by the express terms of the Loan Agreement survive repayment of the Loan. The Payoff Amount shall continue to accrue per diem interest as set forth in the Payoff Letter, and legal fees and expenses until the earlier of payment in full of the Payoff Amount, the recordation of the deed in lieu of foreclosure, or the completion of the foreclosure sale.

Stipulation and Agreed Order, ¶ 2.

---

[2] The Legal Fees and Expenses includes the legal fees and expenses from April 17, 2024 through December 17, 2025 4/17/24, less applicable payments made by the Debtor to AC VIP, and inclusive of $10,000 in estimated fees and expenses from December 1 to December 17, 2025.

18059958

16. As set forth above, AC VIP has incurred legal fees and expenses as a result of the interrupted foreclosure sale, the filing of this Bankruptcy Case, and the necessary motion practice and negotiations in order to protect and collect the amounts owed to AC VIP under the Loan Documents. The Debtor is unambiguously required to pay AC VIP for such amounts in addition to all other amounts owed under the Loan Documents:[3]

| LOAN DOCUMENT SECTION | LOAN DOCUMENT PROVISION |
|---|---|
| **Loan Agreement, Sec. 6.1.13** | "Borrower shall pay all costs and expenses incurred by Lender in making and maintaining the Loans and enforcing its rights under the Loan Documents." |
| **Loan Agreement, Sec. 8.1** | "Borrower shall pay all costs of closing the Loan and all expenses of Lender with respect thereto, including, but not limited to, all legal fees and costs incurred by Lender in conjunction with the Loan, including all fees incurred subsequent to the closing of the Loan in connection with the disbursement, administration, collection (regardless of whether litigation is commenced), or satisfaction of the Loan, advances, recording expenses, survey, taxes, expenses of collection or foreclosure (including attorneys' fees) and similar items. In the vent of the commencement of a bankruptcy proceeding by or against Borrower or otherwise involving the Collateral, Lender shall … be entitled to recover, and Borrower shall be obligated to pay, Lender's attorneys' fees and costs incurred in connection with: (i) any determination of the applicability of the bankruptcy laws to the terms of the Loan Documents or Lender's rights thereunder; (ii) any attempt by Lender to enforce or preserve its rights under the bankruptcy laws, or to prevent Borrower or any other person from seeking to deny Lender its rights thereunder, (iii) any effort by Lender to protect, preserve or enforce its rights against the Collateral, or seeking to modify the automatic stay of 11 USC Section 362 or otherwise seeking to engage in such protection, preservation or enforcement; or (iv) any proceeding(s) arising under the bankruptcy laws, or arising in or related to a case under the bankruptcy laws. Borrower shall pay all Lender costs, fees and expenses within ten (10) days after its receipt of a written request therefor." |
| **Loan Agreement, Sec. 8.3** | "Borrower shall indemnify, defend and hold Lender harmless for, from and against all claims, costs, expenses, actions, suits, proceedings, losses, damages, and liabilities of any kind whatsoever, including limited to attorneys' fees and expenses, arising out of any matter relating to the Loan … This indemnity provision shall continue in full force and effect and shall survive not only the making of the Loan but shall also survive repayment of the Loan and the Performance of all of Borrower's other Obligations under this Agreement and the other Loan Documents." |
| **Deed of Trust at 1** | "in consideration of the Loan made by Beneficiary to Grantor, as evidenced by the Note, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and for the purpose of securing: … (iii) all amounts advanced or costs incurred by Beneficiary for the protection of the Trust Property … or enforcement of this Deed of Trust, the Note, the Agreement and/or any other Loan Document; (iv) any other cost or expense |

---

[3] The Loan Agreement and the Deed of Trust are attached to AC VIP's Lift Stay Motion as Exhibits A-2 and A-3, respectively. *See* Docket No. 8 at 17-43, 44-78.

9

18059958

| | |
|---|---|
| | which, by the terms of this Deed of Trust, the Note, the Agreement and/or any other Loan Document, may be subject to reimbursement to Beneficiary by Granter, …" |
| **Deed of Trust, Sec. 34** | "…if Beneficiary should incur expenses in connection with the collection or enforcement of this Deed of Trust, the Note, the Agreement or any other instrument or document ancillary thereto, Granter shall reimburse Beneficiary on demand for any and all such costs and/or expenses incurred by Beneficiary, including without limitation, attorneys' fees in all trial, bankruptcy and appellate proceedings, … together with interest thereon at the Default Rate from the date such costs and expenses are incurred, and all of said amounts, including interest, shall constitute indebtedness secured by this Deed of Trust to the extent permitted by law." |

17. Therefore, as part of the granting of the Exit Financing Motion, which AC VIP does not generally oppose, the Debtor should be required to pay all amounts as set forth herein, including all legal fees and expenses incurred by AC VIP in connection with protection and enforcing its rights under the Loan Documents.

18. AC VIP reserves all rights under (i) the Loan Documents, (ii) the Stipulation and Agreed Order, and (iii) the Final Cash Collateral Order, including for violations of the Final Cash Collateral Order and unasserted indemnification obligations and expense reimbursement obligations, including legal fees and expenses.

[*Remainder of Page Intentionally Blank*]

18059958

## CONCLUSION

WHEREFORE, AC VIP does not oppose the Exit Financing Motion, subject to AC VIP's response and reservations of rights herein.

Dated: December 15, 2025

> Respectfully submitted,
>
> */s/ Eric M. English*
> Eric M. English (TX 24062714)
> **Porter Hedges LLP**
> 1000 Main Street, 36th Floor
> Houston, Texas 77002
> Telephone: (713) 226-6000
> Fax: (713) 226-6248
> eenglish@porterhedges.com
>
> *Attorney for AC VIP PC Marina Debt, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that foregoing document was electronically filed and served on the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District on December 15, 2025.

> */s/ Eric M. English*
> Eric M. English

18059958